UNITED STATES of America, Appellee,

v.

**Juvenile NB, Appellant.**

No. 94–3668.

United States Court of Appeals, Eighth Circuit.

Submitted March 14, 1995.

Decided July 14, 1995.

Rehearing and Suggestion for Rehearing En Banc Denied Sept. 8, 1995.*

---

* McMillian, Circuit Judge, would grant the suggestion for rehearing en banc.

772

Richard L. Bode, Rapid City, SD, argued, for appellant.

Diana Ryan, Asst. U.S. Atty., Rapid City, SD, argued, for appellee.

Before MAGILL, Circuit Judge, HEANEY, Senior Circuit Judge, and MORRIS SHEPPARD ARNOLD, Circuit Judge.

MAGILL, Circuit Judge.

N.B., a juvenile, appeals from his conviction of two counts of sexual abuse of a child in violation of 18 U.S.C. § 1153 and § 2241(c), arguing that: the court[1] erroneously admitted the testimony of social workers as to hearsay declarations of the children; the court abused its discretion when it limited the scope of his cross-examination of one of the children's mothers; and the evidence was insufficient to support a conviction. Because the court did not err in admitting the hearsay testimony and did not abuse its discretion in limiting cross-examination, and be-

cause the evidence was sufficient, we affirm the district court's judgment of conviction.

## I. BACKGROUND

N.B., a resident of the Pine Ridge Indian Reservation, was charged by information with six counts of sexual abuse of four of his young nieces and nephews, three of them also residents of the reservation.

In November 1989, A.B. and her brothers Q.B. and C.B. moved in with their grandparents and their uncle, defendant N.B. About a year later, the defendant's older sister, M.B., also moved into the same house.

At trial, M.B. testified that one night she saw A.B. in N.B.'s bedroom lying on the bed with N.B. and crying. N.B. was shirtless, the rest of him invisible under the covers, and A.B.'s nightgown had been pushed up. M.B. reported this incident both to A.B.'s grandmother and to A.B.'s mother. A.B.'s mother then reported the incident to social services, who referred the case to child protection social worker Lineeta Fawcett. Fawcett interviewed A.B. over the first few days of May 1992. A.B. stated that N.B. had done "nasty" things to her and to two of her cousins, and identified her vagina on a drawing as one place where N.B. had touched her. Ellen Cuny, supervisor of the Martin, South Dakota, Social Service Office, interviewed A.B. on May 8, 1992. A.B. repeated the information she had given Fawcett, and further stated that N.B. had put both his fingers and his penis inside her. She stated that N.B. had done nasty things to her twice, and that he also did them to her cousins, including S.B., a cousin who lived in a different household, but visited from time to time. A.B. also expressed concern about her brothers, Q.B. and C.B., who were also interviewed a few days later.

An additional social worker, Carol Traversie, was notified of A.B.'s statement that N.B. had also abused her cousins, including S.B. Traversie informed S.B.'s parents of the allegations, and S.B.'s mother told Traversie of her suspicions regarding an incident

---

1. The Honorable Richard H. Battey, Chief Judge, United States District Court for the District of South Dakota.

that took place at the household on the Pine Ridge Indian Reservation during March 1992, and of her having seen a discharge on S.B.'s underwear after visiting the Pine Ridge house. Traversie interviewed S.B., who stated that N.B. had touched her in her crotch. When Traversie asked if N.B. had put anything into her crotch, S.B. began to cry and would not answer. Traversie interviewed S.B. again the next day, when S.B. pointed out the crotch and rear areas on a drawing as places where N.B. had touched her.

Following this series of interviews, N.B. was charged with sexual abuse of A.B., Q.B., C.B. and S.B., and a court trial was held.

At trial, A.B., eight years old, testified that N.B. had come into her room, pulled her nightgown up and her underwear down, and got on top of her. He then touched her vagina with his hands and put his penis inside her. She testified that "it hurted," that she was five years old and in kindergarten when it happened, and that that was the only time N.B. did that to her. A.B. stated that N.B. had also done this to her cousin, S.B., but that she had never seen him do it to any other children.

S.B., also about eight years old, testified that she was in the basement of the Pine Ridge house when N.B. told her to pull down her pants. When she did not, he pulled them down and got on top of her. A.B. saw them and told S.B.'s father and mother, who were upstairs. Her father came down, and N.B. got off then. She testified that when N.B. was on top of her, he placed his "private" inside her "crotch," and that it felt ugly. She further stated that this was the only time it happened to her, and that she had seen N.B. do similar things to A.B.

Q.B. and C.B. also testified at trial regarding the alleged incidents of abuse concerning them.[2] The three interviewing social workers testified as to all four children's statements about these incidents.

The court found N.B. not guilty of count II, charging sexual abuse of Q.B., and ordered judgments of acquittal on counts III,

charging sexual abuse of C.B., and counts IV and VI, charging sexual abuse of A.B. in December 1991 and March 1992. He found N.B. guilty of counts I and V, charging sexual abuse of A.B. during the fall of 1990 and S.B. in March 1992. This appeal followed.

## II. DISCUSSION

Defendant presents three claims in this appeal: first, that the court erred in admitting the hearsay declarations of the children, testified to by three social workers who had interviewed the children; second, that the court abused its discretion in limiting the scope of cross-examination of Mrs. Brown, one of the children's mother; and third, that the evidence was insufficient to convict N.B. on counts I and V of the information. We address each issue in turn.

### A. Admission of Hearsay Testimony

#### 1. Standard of Review

N.B. failed to make any objection to the admission of the three social workers' testimony at any time during the proceedings. We therefore examine the admission of this evidence for plain error only. *United States v. Balfany*, 965 F.2d 575, 579 (8th Cir.1992). We have authority to reverse the decision of the district court only if: there is an error; it is "plain," synonymous with "clear" or "obvious"; and it affected substantial rights. *United States v. Olano*, —— U.S. ——, —— —— ——, 113 S.Ct. 1770, 1777–78, 123 L.Ed.2d 508 (1993). Only after we find that the error meets this standard do we have discretion to reverse, basing our decision on whether the error resulted in a miscarriage of justice. *Id.* at —— —— ——, 113 S.Ct. at 1778–79. We find that there was no error by the district court in admitting this evidence, and, even if we assume error, that the error was not plain.

#### 2. Confrontation Clause

Defendant cites *Idaho v. Wright*, 497 U.S. 805, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990), which sets out the Confrontation Clause test in cases of children's hearsay

---

**2.** Because N.B. was found not guilty of the count alleging abuse of Q.B., and the count alleging abuse of C.B. was dismissed, we do not address their testimony further.

testimony, in support of his contention that the social workers' testimony was not admissible. *Wright*, however, does not apply to this case. In *United States v. Spotted War Bonnet*, 933 F.2d 1471 (8th Cir.1991), *cert. denied*, 502 U.S. 1101, 112 S.Ct. 1187, 117 L.Ed.2d 429 (1992), this Court reexamined a recent case in light of the Supreme Court's holding in *Wright*, and determined that "[t]he [Confrontation] Clause is satisfied when the hearsay declarants, here the alleged child victims, actually appear in court and testify in person." *Id.* at 1473; *see Dolny v. Erickson*, 32 F.3d 381, 385 (8th Cir.1994), *cert. denied*, — U.S. ——, 115 S.Ct. 902, 130 L.Ed.2d 786 (1995). We further elucidated the requirements of the Confrontation Clause in cases of children's hearsay:

> To be sure, simply putting a child on the stand, regardless of her mental maturity, is not sufficient to eliminate all Confrontation Clause concerns. If, for example, a child is so young that she cannot be cross-examined at all, or if she is 'simply too young and too frightened to be subjected to a thorough direct or cross-examination[,]' the fact that she is physically present in the courtroom should not, in and of itself, satisfy the demands of the Clause. Under [*United States v.*] *Owens* [484 U.S. 554, 108 S.Ct. 838, 98 L.Ed.2d 951 (1988) ], however, a perfectly satisfactory cross-examination is not required by the Clause, and a witness who cannot remember the details of statements she has made in the past can still be sufficiently available for

cross-examination to satisfy the constitutional requirement.

*Spotted War Bonnet*, 933 F.2d at 1474 (quoting *United States v. Dorian*, 803 F.2d 1439, 1446 (8th Cir.1986)). In sum, when the child whose hearsay testimony is admitted also testifies himself or herself, the only Confrontation Clause issue is whether "the trial provided an opportunity for effective cross-examination." [3] *Dolny*, 32 F.3d at 385 (citing *Spotted War Bonnet*, 933 F.2d at 1474–75).

Both A.B. and S.B. testified and were cross-examined. While the transcript reveals that they were both very embarrassed, and perhaps frightened, it is clear that effective cross-examination was conducted. Examining the children, defense counsel was able to elicit testimony regarding timing of the alleged abuse, when and to whom the child reported the abuse, and the child's contact with social workers. The children answered the questions asked by both counsel and by the court. The court insisted that foundation for capacity be established by the prosecuting counsel, and, although there was some confusion concerning details during portions of the cross-examination, we find that it was effective, and that the Confrontation Clause was satisfied.

### 3. Hearsay Exception Rule 803(24)

■ When there are no Confrontation Clause implications, we analyze children's hearsay testimony for admissibility under Federal Rule of Evidence 803(24), the "catch-all" exception to the hearsay rule.[4] Our analysis of this question is long established;

---

**3.** In *Dolny*, the panel stated that, when the child testifies, "neither *Idaho v. Wright, supra*, nor *Ring v. Erickson*, 983 F.2d 818 (8th Cir.1993), is applicable." *Dolny*, 32 F.3d at 385 n. 7. *Ring* is a recent decision applying the *Wright* Confrontation Clause standard to a case in which the child was found incompetent to testify, and the prosecution sought to admit her videotaped interviews with a doctor and a social worker into evidence. *Ring*, 983 F.2d at 819. In the instant case, neither *Wright* nor *Ring* applies, because the children testified and were subjected to effective cross-examination. *See Spotted War Bonnet*, 933 F.2d at 1475.

**4.** Federal Rule of Evidence 803(24) states:
   **Other exceptions.** A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial

guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. However, a statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to meet it, the proponent's intention to offer the statement and the particulars of it, including the name and address of the declarant.

we apply a five-part test.[5] Hearsay testimony may be admitted under Rule 803(24) within the framework of the following criteria:

(1) The statement must have circumstantial guarantees of trustworthiness equivalent to the twenty-three specified exceptions listed in rule 803;

(2) The statement must be offered as evidence of a material fact;

(3) The statement must be more probative on the point for which it is offered than any other evidence the proponent can procure through reasonable efforts;

(4) The general purposes of the Federal Rules and the interests of justice must best be served by admission of the statement into evidence;

(5) The proponent of the evidence must give the adverse party the notice specified within the rule.

*United States v. Grooms,* 978 F.2d 425, 427 (8th Cir.1992) (citing *Dorian,* 803 F.2d at 1443; *United States v. Renville,* 779 F.2d 430, 439 (8th Cir.1985)).

■ Appellant N.B. only challenges the admission of the testimony on the basis of prong (1), which asks whether the hearsay testified to by the social workers had sufficient circumstantial guarantees of trustworthiness.[6] We examine the reliability of statements made by child abuse victims to other persons " 'in light of the circumstances at the time of the declaration and the credibility of the declarant.' " *Grooms,* 978 F.2d at 427 (quoting *Renville,* 779 F.2d at 440; *Dorian,* 803 F.2d at 1444).

■ We consider a wide range of factors in determining whether this type of hearsay testimony is sufficiently trustworthy. Among them are: the training and experience of the social worker; whether the child was interviewed using open-ended questions; the age of the child and whether the child used "age-appropriate language" in discussing the abuse; the length of time between the incident of abuse and the making of the hearsay statement; and whether the child repeated the same facts consistently to adults. *See Dorian,* 803 F.2d at 1444; *Grooms,* 978 F.2d at 427; *and Renville,* 779 F.2d at 440–41. No single factor is dispositive; we examine the factors to determine if there are sufficient positive signs of trustworthiness.

We find that the testimony of the three social workers regarding A.B.'s and S.B.'s statements have ample guarantees of trustworthiness. First, the social workers all had extensive experience in interviewing abused children. Carol Traversie had, at the time of the trial, been working in social services for nine years. She had also been a day-care center director for two years, and had specialized training in interviewing and working with abused children. Lineeta Fawcett had worked for Child Protection Services for six years, and had state certification in child abuse case management. Ellen Cuny had worked for more than six years for Child Protection Services and had state certification as a social worker. All three social workers were strangers to the children, with no motive to manipulate the evidence.

---

5. We note that, in *Spotted War Bonnet,* we listed some previous cases in this circuit that may no longer be helpful in light of *Wright.* 933 F.2d at 1473. This limitation on these cases, however, is only applicable to Confrontation Clause analysis, not to Rule 803(24) analysis, because *Wright* has no effect on hearsay analysis when there is no Confrontation Clause issue.

6. Only prong (3) of the remaining prongs offers a significant question in this case: whether the social workers' testimony was more probative on the point for which it was offered than any other evidence reasonably available to the prosecutor. The testimony of the three social workers provided information that the children's testimony could not. The children were young and patently embarrassed to testify regarding the details of the abuse; in addition, the social workers testified as to dates of abuse and as to the circumstances of the abuse as described by the children in their interviews. *See Grooms,* 978 F.2d at 427 (the hearsay witness' testimony "was more detailed because it contained specific descriptions of the incidents including the dates and places of the abuse," and was therefore more probative than the child's testimony). The children's testimony, while adequate to satisfy the Confrontation Clause, was brief and limited in its scope by the natural confusion as to times and details of very young children, and by the children's shame regarding the abuse. *See Spotted War Bonnet,* 933 F.2d at 1474–75. Prong (3) of the standard is satisfied.

The two initial interviewers, Traversie and Fawcett, used interview techniques based on open-ended, nonsuggestive questions to determine whether abuse had occurred. Traversie testified that, in her first encounter with S.B. at which S.B. was willing to talk with her, she asked S.B. if anyone had ever touched her in a way that made her feel afraid or sad. In response, S.B. pointed at the crotch and buttocks areas of a drawing of an unclothed child. When Traversie asked who touched her there, S.B. responded that N.B. had. Similarly, when Fawcett interviewed A.B., A.B. said that N.B. had done "nasty" things to her. Fawcett then gave A.B. diagrams on which A.B. marked where N.B. had touched her. Cuny took over A.B.'s case from Fawcett when Fawcett moved to another city, and her interview of A.B. appears to have focused primarily on establishing the dates on which the alleged abuse took place.

At the time of the initial interviews, S.B. and A.B. were about seven years old. " '[A] declarant's young age is a factor that may substantially lessen the degree of skepticism with which we view [her] motives,' and mitigates in favor of the trustworthiness and admissibility of her declarations." *Dorian*, 803 F.2d at 1445 (quoting *Renville*, 779 F.2d at 441). Further, both girls used graphic but age-appropriate language during their interviews with the social workers. *See, e.g.*, I Trial Tr. at 102, 142.

In S.B.'s case, the interview followed closely upon the incident of abuse; the incident took place during March 1992, and S.B. was interviewed by Traversie during the first few days of June 1992. The incident concerning A.B. took place during the fall of 1990 and she was interviewed by Fawcett in May 1992. Although one and one-half years is a fairly extended period to pass between the incident and the hearsay statement, A.B.'s statements concerning N.B. were consistent with and in part corroborated by S.B.'s statements made very soon after her incident of abuse. Given the strength of other factors, and the corroboration by S.B.'s statements, we do not think the elapsed time between A.B.'s incident of abuse and her initial statement to Fawcett outweighs the other indicia of trustworthiness in this case.

The facts given by the two girls regarding the incidents are essentially consistent. A.B.'s descriptions of the abusive incident evolved over time to include more detail, but, as Cuny testified, children may not trust a strange adult enough to reveal these disturbing facts fully at the start. *See Dorian*, 803 F.2d at 1444 ("According to the psychologist, it frequently takes a long time for children to share what is really going on and they may then do so in stages, telling a little more each time.").[7] A.B. herself testified and was cross-examined, and Fawcett and Cuny were cross-examined regarding any inconsistencies, ensuring that the court was well aware of them and able to consider any inconsistencies in deciding what weight to give the hearsay statements. *See Dorian*, 803 F.2d at 1444–45.

---

**7.** The only possibly significant inconsistency in the girls' stories is that A.B. told the social workers that N.B. had abused her more than once, but in her testimony at trial, replied "no" to the question of whether N.B. had ever "touch[ed] [her] vagina with his penis again" after the fall 1990 incident. I Trial Tr. at 14–15. In addition, she had told Fawcett that she was worried about N.B. abusing her brothers, and told Cuny that N.B. had also abused another male cousin in addition to herself and S.B., but in her trial testimony, she stated that she had never seen N.B. do anything nasty to children other than herself and S.B.

A.B.'s statements regarding the incident for which N.B. was convicted, the single incident prior to Christmas of 1991, were consistent in relevant facts. Her response to the question, at trial, of whether further abuse occurred does not directly contradict Fawcett's testimony of A.B.'s statement's to her; the question at trial concerned a very specific action by N.B., whereas Fawcett's and Cuny's conversations with A.B., in which A.B. asserted further incidents of abuse, focused on "bad" touching, including manual penetration of the vagina. These two statements are not inherently inconsistent. Similarly, A.B.'s assertions regarding abuse of her brothers and male cousin are not inherently inconsistent. At trial, she was asked if she "saw" N.B. do anything nasty to the boys. Her statement to Cuny, according to Cuny's testimony, was not that she saw N.B. abuse her male cousin, but that she simply asserted that N.B. also did these things to him. Regarding her brothers, Fawcett's testimony was that A.B. was concerned that the abuse extended to them, not that A.B. saw N.B. abuse them.

We conclude that A.B.'s and S.B.'s statements to the three social workers contained sufficient guarantees of trustworthiness. The social workers were well trained and were strangers to the children; the children were very young and used age-appropriate language; the initial two interviewers used open-ended interview techniques; in S.B.'s case, the interview took place close on the heels of the abusive incident; and the children's stories were essentially consistent in the parts relevant to this appeal.

We find that the district court did not commit error, let alone plain error, in admitting the testimony of the three social workers regarding the statements made by S.B. and A.B. during their interviews concerning the incidents of abuse at issue in this case.

### B. Exclusion of Evidence

Defendant argues that the court improperly limited the scope of cross-examination of Gloria Brown, the mother of one of the abused children. We review the district court's ruling on the proper scope of cross-examination for abuse of discretion. *Balfany*, 965 F.2d at 583.

The first line of questioning that defendant asserts was improperly excluded by the trial judge was in fact not excluded at all:

> BODE [counsel for defendant]: You perceive this abuse as being tied into some controversy between you as a High Elk and the Brown family?
>
> BROWN: Can you explain it more?
>
> THE COURT: I am wondering the relevance of this, counsel.
>
> BODE: Well, Your Honor, we are trying to show whether there's any motive for this witness' testimony and I am just exploring whether or not there is any revenge being sought by Mrs. Brown against the Brown family.
>
> THE COURT: How would that tie into the alleged sexual abuse of the children?
>
> BODE: Well, Your Honor, if she has a motive for supporting these allegations, and it ties into a controversy between she and the Brown family, then I think I am entitled to determine whether or not she is giving credible testimony for the Court.

> THE COURT: I will let you proceed.
>
> BODE: Thank you, Your Honor.

I Trial Tr. at 77–78. Although Mr. Bode then moved on to a different topic in his questioning, the court clearly accepted his reasons for pursuing the question of Mrs. Brown's feelings about the Brown family, and gave him explicit permission to proceed with these questions. This evidence was not excluded.

The second line of questioning defendant asserts was improperly excluded were questions regarding the examinations of the children and of N.B. for sexually transmitted diseases. The prosecuting attorney objected to these questions, and the court sustained the objection.

Although the Confrontation Clause guarantees the right to cross-examine witnesses, "trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall*, 475 U.S. 673, 678–79, 106 S.Ct. 1431, 1435, 89 L.Ed.2d 674 (1986). The court excluded this line of questioning because it was not relevant, or, if relevant, only marginally so. I Trial Tr. at 83. It was already conceded, and accepted by the court, that there was no medical substantiation of abuse, and that neither N.B. nor any of the children had a sexually transmitted disease. We find that it was within the court's discretion to exclude this testimony as irrelevant to the question of whether the alleged abuse occurred, because any point to which the testimony could go had already been established.

### C. Sufficiency of the Evidence

Finally, defendant argues that the evidence was insufficient to convict him for the abuse of S.B. and A.B. We sustain a conviction if "*any* rational trier of fact could have found the essential elements of the crimes beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). Further, we

must sustain "if there is substantial evidence, taking the view most favorable to the Government, to support it." *United States v. Possick,* 849 F.2d 332, 335 (8th Cir.1988) (quoting *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942)).

Defendant argues that the court could not reasonably simultaneously acquit on counts III and VI of the information and find the defendant guilty on count I. We disagree. The counts involved separate incidences of abuse, and the court could reasonably find that A.B. was credible, and the evidence convincing, regarding the incident underlying count I, but find insufficient evidence regarding the incidences underlying counts III and VI. A.B. consistently reported, from her early meetings with social workers to her testimony at trial, that the incident underlying count I occurred, and the details she provided regarding that incident were essentially consistent. A.B., however, did not assert at trial that the incidences underlying counts III and VI occurred, and denied at trial that N.B. had touched her with his penis during the period following Christmas 1992. It was within the factfinder's purview to determine that A.B. was telling the truth regarding all three incidents when she gave her testimony. Further, both A.B.'s and S.B.'s testimony was corroborated by that of the social workers and of Mrs. Brown. There was substantial evidence supporting the court's finding that N.B. was guilty of the alleged abuse of A.B. and S.B.

Second, we have found that the court did not commit error or abuse its discretion in admitting the testimony of the social workers or in excluding the cross-examination of Mrs. Brown regarding sexually transmitted diseases. Defendant appears to rely on these asserted errors in his sufficiency of the evidence argument, but such reliance is misguided, as we find that the court did not err.

We find that the evidence was sufficient for a rational factfinder to find N.B. guilty beyond a reasonable doubt of counts I and V.

## III. CONCLUSION

We affirm the district court's judgment of conviction because the court did not commit plain error in admitting the hearsay testimony, and did not abuse its discretion in limiting cross-examination, and because the evidence was sufficient to convict N.B. of counts I and V.

MORRIS SHEPPARD ARNOLD, Circuit Judge, dissenting.

I dissent because I do not think that the out-of-court statements by the alleged victims in this case were admissible under Fed. R.Evid. 803(24) because they did not have "circumstantial guarantees of trustworthiness" equivalent to the twenty-three specified exceptions to the hearsay rule. I agree with the court that there is no Confrontation Clause violation here because the children testified and there was an opportunity for effective cross-examination. *See, e.g., Dolny v. Erickson,* 32 F.3d 381, 385–86 (8th Cir. 1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 902, 130 L.Ed.2d 786 (1995), and *United States v. Spotted War Bonnet,* 933 F.2d 1471, 1473–75 (8th Cir.1991), *cert. denied,* 502 U.S. 1101, 112 S.Ct. 1187, 117 L.Ed.2d 429 (1992). But that does not mean, as the court seems to think, that the considerations that the Supreme Court has identified in its Confrontation Clause cases for determining the reliability of testimony have no relevance to or application in garden-variety evidence cases in which the equivalent issue is raised. In other words, I do not see why circumstances that guarantee trustworthiness are not the same as circumstances that demonstrate reliability.

None of the circumstances that the court recites convinces me that the admitted statements are any more reliable than most hearsay statements. More tellingly, some of the alleged indicia of reliability to which the court points have actually been described by the Supreme Court as characteristics that cut against the admissibility of out-of-court statements. For one thing, the fact that a child witness has used age-appropriate language was implicitly rejected as indicative of reliability in *Idaho v. Wright,* 497 U.S. 805, 821, 110 S.Ct. 3139, 3149, 111 L.Ed.2d 638 (1990); *see also Ring v. Erickson,* 983 F.2d 818, 821 (8th Cir.1993). For another, the fact that a child's statement is corroborated

by other evidence is irrelevant to its own reliability: In making admissibility determinations, we are supposed to consult the circumstances "surrounding the making of the statement, not corroborative evidence of the act." *Ring,* 983 F.2d at 820. Nor is *Dolny,* 32 F.3d at 385 n. 7, to the contrary. That case involved a Confrontation Clause challenge and the question raised was whether there had been an opportunity for effective cross-examination of the witness. The statement in that case that *Wright* and *Ring* were not applicable has to be understood, as always, in context. We were merely saying that when an out-of-court statement has been admitted pursuant to a well-recognized hearsay exception, and the child witness has testified, the only relevant inquiry was whether the defendant had had a fair chance to cross-examine. That, by hypothesis, is not our case. This evidence was not admitted pursuant to such an exception, and could not have been.

Finally, I see no difference between this case and *United States v. Balfany,* 965 F.2d 575, 581 (8th Cir.1992), where we held that statements like these did not meet the requirement of Fed.R.Evid. 803(24)(B) that they must be "more probative on the point for which [they are] offered than any other evidence which the proponent can procure through reasonable efforts." The statements in this case seem to me to add nothing of any particular value to the testimony of the children themselves. Indeed, it would seem that it would be a rare case that could meet the demands of this aspect of Fed.R.Evid. 803(24) when the declarant himself or herself testifies.

Because I believe that the district court erroneously admitted significant testimony here, and because the government does not even argue, much less attempt to demonstrate, that it was harmless for the court to have done so, I would reverse. I believe that the government did not play by the rules in this case and that it is our job to see to it that it does.