# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 97-1892

_____

| | |
|---|---|
| Jerry Lee Olesen, | * |
| | * |
| Appellant, | * |
| | *  Appeal from the United States |
| v. | *  District Court for the |
| | *  District of South Dakota. |
| Joe Class, Warden, | * |
| South Dakota State Penitentiary, | * |
| | * |
| Appellee. | |

_____

Submitted:  October 23, 1998

Filed:  January 4, 1999

_____

Before RICHARD S. ARNOLD, WOLLMAN, and MORRIS SHEPPARD ARNOLD,
        Circuit Judges.

_____

MORRIS SHEPPARD ARNOLD, Circuit Judge.

Jerry Lee Olesen was convicted in a South Dakota court on two counts of
unlawful sexual contact with a child under sixteen, two counts of second-degree rape,
and one count of third-degree rape, based on alleged sexual contact with his daughters,
three-year-old A.T., five-year-old L.Z., and nineteen-year-old L.S.  After his
convictions were affirmed, *see State v. Olesen*, 443 N.W.2d 8 (S.D. 1989), and his
state habeas corpus petition was denied, *see Olesen v. Lee*, 524 N.W.2d 616 (S.D.
1994), Mr. Olesen filed a federal habeas corpus petition pursuant to 28 U.S.C. § 2254.

The district court denied the petition, *see Olesen v. Class*, 962 F. Supp. 1556 (D. S.D. 1997), and Mr. Olesen appeals. We affirm in part and reverse in part.

I.

L.Z. did not testify at Mr. Olesen's trial. Dr. Willis Sutliff, a pediatrician, testified, however, that during his examination of L.Z., she identified Mr. Olesen as the individual who had sexually abused her. Mr. Olesen maintains that the admission of L.Z.'s out-of-court statement identifying him as the perpetrator violated his right under the Sixth Amendment to confront the witnesses against him. *See* U.S. Const. amend. VI.

A hearsay statement is admissible in a criminal trial, despite the admonitions of the Confrontation Clause, "if it bears adequate 'indicia of reliability.' " *Ohio v. Roberts*, 448 U.S. 56, 66 (1980), quoting *Dutton v. Evans*, 400 U.S. 74, 89 (1970) (plurality opinion). The reliability requirement is satisfied if the relevant statement falls within a "firmly rooted hearsay exception" or if it is supported by "a showing of particularized guarantees of trustworthiness." *Roberts*, 448 U.S. at 66.

South Dakota maintains that L.Z.'s statement identifying Mr. Olesen falls within the firmly rooted hearsay exception for statements made for purposes of medical diagnosis or treatment. *See* S.D. Codified Laws § 19-16-8, the equivalent of Fed. R. Evid. 803(4) in all pertinent respects. *See White v. Illinois*, 502 U.S. 346, 355-56, 355-56 n.8 (1992) (medical diagnosis/treatment exception is firmly rooted hearsay exception). For this proposition, South Dakota relies on our decision in *United States v. Renville*, 779 F.2d 430, 436 (8th Cir. 1985), in which we held that statements by a child abuse victim to a physician that the abuser was a member of the victim's immediate family may properly be admitted under this hearsay exception. *See also State v. Olesen*, 443 N.W.2d at 9, and *State v. Garza*, 337 N.W.2d 823, 824-25 (S.D. 1983) (*per curiam*), both relying on Eighth Circuit case law in holding identifications by child abuse victims admissible under S.D. Codified Laws § 19-16-8.

We recognized in *Renville* and in later decisions, however, that such statements are admissible only when the prosecution is able to demonstrate that the victim's motive in making the statement was consistent with the purpose of promoting treatment -- that is, "where the physician makes clear to the victim that the inquiry into the identity of the abuser is important to diagnosis and treatment, and the victim manifests such an understanding." *Renville*, 779 F.2d at 438. Such a rule is consistent with the rationale underlying the hearsay exception for medical treatment and diagnosis, because the exception "is based on the belief that a person seeking medical treatment is unlikely to lie to a doctor she wants to treat her, since it is in her best interest to tell the truth." *Ring v. Erickson*, 983 F.2d 818, 820 (8th Cir. 1993). In other words, the rule is bottomed upon the premise that a patient's "selfish motive," *id.*, in receiving proper treatment guarantees the trustworthiness of the statements made to her physician. *Id.*; *see also United States v. White*, 11 F.3d 1446, 1449-50 (8th Cir. 1993).

We believe that the prosecution in this case failed to establish that L.Z.'s frame of mind at the time of Dr. Sutliff's examination was that of a patient seeking medical treatment. Dr. Sutliff testified only that he explained to L.Z. "what was going to happen," presumably an explanation of the physical examination itself. There is no evidence in the record that he explained to L.Z. that his questions regarding the identity of her abuser were important to diagnosis or treatment, or that L.Z., who was only five years old at the time, understood the medical significance of being truthful in identifying her abuser to her doctor. Because the prosecution failed to establish L.Z.'s strong motive to tell the truth to Dr. Sutliff in order to promote treatment, under our case law L.Z.'s statement to Dr. Sutliff was not properly admitted.

## II.

South Dakota also maintains that L.Z.'s statement to Dr. Sutliff identifying Mr. Olesen as her abuser possessed sufficient "particularized guarantees of trustworthiness," *Roberts*, 448 U.S. at 66, to survive a Confrontation Clause objection. In determining whether L.Z.'s statement was properly admitted on this ground, we

examine its trustworthiness in light of the totality of the circumstances that surrounded its making, without regard to other evidence in the record that might corroborate the statement. *See Idaho v. Wright*, 497 U.S. 805, 822-23 (1990).

South Dakota directs our attention to certain facts that it believes tend to establish the trustworthiness of L.Z.'s statement. First, it points out that Dr. Sutliff had expertise in the diagnosis of child abuse and that he did not use leading questions in eliciting L.Z.'s statement. Second, it points to Dr. Sutliff's testimony that L.Z. had a better knowledge of human anatomy than the average five-year-old and that she did not waver in her statement identifying Mr. Olesen as her abuser. Third, it contends that L.Z.'s young age suggests that she lacked any reason to accuse Mr. Olesen falsely and therefore provides further evidence of the trustworthiness of her statement identifying him as her abuser.

In support of its position, South Dakota cites several cases in which we have relied on similar facts in holding that hearsay statements by child victims identifying their abusers possessed sufficient guarantees of trustworthiness to overcome a Confrontation Clause objection to their admission. *See United States v. N.B.*, 59 F.3d 771, 775 (8th Cir. 1995); *United States v. Grooms*, 978 F.2d 425, 428 (8th Cir. 1992); *Dana v. Dep't of Corrections*, 958 F.2d 237, 239 (8th Cir. 1992), *cert. denied*, 505 U.S. 1225 (1992); and *McCafferty v. Leapley*, 944 F.2d 445, 451-52 (8th Cir. 1991), *cert. denied*, 503 U.S. 911 (1992). We believe, however, that the hearsay statements in those cases were significantly more trustworthy and raised fewer Confrontation Clause concerns than L.Z.'s statement identifying Mr. Olesen.

First, the child victims in *N.B.* and *Grooms* testified at trial, so the defendants in those cases had the opportunity to confront and cross-examine their accusers. *See N.B.*, 59 F.3d at 775, and *Grooms*, 978 F.2d at 427-28. We have recognized that the Confrontation Clause is generally satisfied when the child victims whose hearsay statements have been admitted actually appear in court and testify in person. *See*, *e.g.*,

-4-

*United States v. Spotted War Bonnet*, 933 F.2d 1471, 1473 (8ᵗʰ Cir. 1991), *cert. denied*, 502 U.S. 1101 (1992). In Mr. Olesen's case, however, L.Z. did not testify at trial, and the Confrontation Clause of course presents far greater obstacles to admitting hearsay statements in such circumstances. *See id.*

South Dakota's reliance on *Dana* and *McCafferty* is likewise misplaced. In both of those cases, we found the children's statements trustworthy in part because the children provided graphic, detailed descriptions of the alleged abuse, thereby lending credibility to their statements identifying their abusers. *See Dana*, 958 F.2d at 239, and *McCafferty*, 944 F.2d at 450-52. By contrast, Dr. Sutliff's testimony at trial indicates that L.Z. said very little during the interview and communicated primarily by nodding her head in response to Dr. Sutliff's questions:

> I asked [L.Z.] if she had ever been hurt around her bottom, and she replied that her daddy had hurt her. I then asked her where and she pointed to the vaginal area. I then asked if someone had, if her father had put his fingers in her and she nodded affirmatively. I then asked if it hurt and she again indicated affirmatively that it had hurt. ... I asked her if she had, if he had placed [his penis] in her and she indicated affirmatively again. ... She did not elaborate in detail, it was just, she did say that she had been hurt and when asked about the area, indicated ... her vaginal area and nodded as I asked the questions.

We believe that this account of Dr. Sutliff's conversation with L.Z. falls far short of the "particularized guarantees of trustworthiness," *Roberts*, 448 U.S. at 66, demonstrated in our earlier cases.

South Dakota calls our attention to a number of other cases discussing the admissibility of hearsay statements by child victims identifying their abusers. Those cases are inapposite, however, either because the defendants in those cases did not raise a claim based on the Confrontation Clause, *see, e.g.*, *Lovejoy v. United States*,

-5-

92 F.3d 628, 631-32 (8th Cir. 1996), and *Renville*, 779 F.2d at 435-41, or because we held that the hearsay statements at issue fell within a firmly rooted hearsay exception and thus did not violate the Confrontation Clause, *see, e.g.*, *United States v. Balfany*, 965 F.2d 575, 580 (8th Cir. 1992). In addition, several of the earlier cases that South Dakota relies on are of dubious value after the Supreme Court's decision in *Wright*, 497 U.S. at 822-23, because they "did not subject the statements in question to the rigorous and carefully structured Confrontation Clause analysis that is now required under *Wright*." *Spotted War Bonnet*, 933 F.2d at 1473; *see also United States v. Dorian*, 803 F.2d 1439, 1444-45, 1447 (8th Cir. 1986) (relying on corroborating evidence now impermissible under *Wright*).

In short, after carefully reviewing the record in this case, we believe that L.Z.'s statement to Dr. Sutliff lacked sufficient guarantees of trustworthiness to be admissible under *Wright*. The evidence produced by South Dakota demonstrates, at most, that L.Z. was a victim of sexual abuse; it does not ensure that her statement identifying Mr. Olesen as the abuser was itself sufficiently trustworthy to be admitted in the face of a Confrontation Clause objection. The admission of this statement at trial therefore violated Mr. Olesen's constitutional rights.

### III.

While we have concluded that Mr. Olesen's rights under the Confrontation Clause were violated, he is not entitled to relief if the error in admitting the offending statement was harmless. *See Delaware v. Van Arsdall*, 475 U.S. 673, 681-84 (1986). In most habeas corpus cases, we review the record to decide "whether the error 'had substantial and injurious effect or influence in determining the jury's verdict.' " *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993), quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946). In this case, however, because the state courts did not review the admission of L.Z.'s statement for harmless error, we review the constitutional violation under the standard set forth in *Chapman v. California*, 386 U.S. 18, 24 (1967). *See Orndorff v. Lockhart*, 998 F.2d 1426, 1430 (8th Cir. 1993), *cert. denied*,

511 U.S. 1060, 1063 (1994). Under *Chapman*, 386 U.S. at 24, the error in admitting L.Z.'s statement identifying Mr. Olesen was harmless only if it is clear beyond a reasonable doubt that its admission did not contribute to the jury's guilty verdict. " 'The question is whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction.' " *Id.* at 23, quoting *Fahy v. Connecticut*, 375 U.S. 85, 86-87 (1963). If so, the error in admitting the evidence was not harmless.

The jury, as we have said, convicted Mr. Olesen of five separate offenses: one count of unlawful sexual contact with L.Z., one count of unlawful sexual contact with A.T., two counts of second-degree rape of L.S., and one count of third-degree rape of L.S. In determining whether the admission of L.Z.'s statement identifying Mr. Olesen was harmless error, we consider separately the impact of that statement on the jury's verdict for each of these offenses.

After carefully reviewing the record in this case, we cannot say that the admission of L.Z.'s statement was harmless beyond a reasonable doubt with regard to Mr. Olesen's conviction for unlawful sexual contact with her. We believe, in fact, that it is clear that L.Z.'s statement was important evidence in the prosecution's case against Mr. Olesen and that the statement very likely contributed to his conviction for unlawful sexual contact with her.

The only other testimony at trial identifying Mr. Olesen as L.Z.'s abuser was that of L.S., who testified that Mr. Olesen had sexually abused her on three occasions and that she had witnessed him sexually abusing her younger sisters on one occasion. On cross-examination, however, L.S. admitted that her testimony at trial differed from the account of sexual abuse that she had offered in her grand jury testimony, and she stated that her grand jury testimony was only "half-way truth." L.S.'s testimony during the trial, moreover, was internally inconsistent: She initially testified that on May 20, 1985, she had accompanied her father to a bar in a nearby town and that he had raped her on the way home that evening. After several defense witnesses testified that L.S. had

attended a fourth sister's junior high school graduation with other family members that evening, however, L.S. took the stand again and testified that the rape had in fact occurred the next day.

In addition to pointing out the inconsistencies in L.S.'s testimony, moreover, Mr. Olesen's trial counsel attacked L.S.'s credibility by introducing evidence of her drug and alcohol abuse, numerous suicide attempts, and several hospital stays for psychiatric care. Numerous witnesses, including Mr. Olesen's wife and three of his other children, denied that any sexual abuse had occurred and attacked L.S.'s credibility and reputation for veracity.

In short, we believe that it is clear from the record that the credibility of L.S., who presented the only evidence of Mr. Olesen's abuse of L.Z. other than that in Dr. Sutliff's testimony, was in question throughout this trial. L.Z.'s statement identifying Mr. Olesen as her abuser was therefore powerful evidence against him. The state, moreover, evidently understood the weight that the jurors would likely give to L.Z.'s statement, because the prosecutor relied heavily on that statement in closing argument.

South Dakota maintains that the jury could have convicted Mr. Olesen of unlawful sexual contact with L.Z. on the strength of L.S.'s testimony alone, absent L.Z.'s corroborating statement identifying Mr. Olesen as her abuser. We agree that L.S.'s testimony alone would have been sufficient, as a matter of law, to obtain Mr. Olesen's conviction for unlawful sexual contact with L.Z. When we review constitutional violations for harmless error, however, the test is not "whether there was sufficient evidence on which the petitioner could have been convicted without the evidence complained of. The question is whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction." *Fahy*, 375 U.S. at 86-87.

-8-

We think, for the reasons already indicated, that L.Z.'s statement identifying Mr. Olesen as her abuser was important evidence that significantly strengthened the prosecution's case against him, and thus we cannot conclude beyond a reasonable doubt that the jury did not rely upon L.Z.'s statement in returning a guilty verdict on the count with respect to L.Z. The error in admitting the statement was therefore not harmless, and Mr. Olesen is entitled to a writ of habeas corpus on his conviction for unlawful sexual contact with L.Z.

We are of the view, however, that the erroneous admission of L.Z.'s hearsay statement had no appreciable effect on the jury's guilty verdicts on the four other counts. In her conversation with Dr. Sutliff, L.Z. stated only that Mr. Olesen had sexually abused her; she made no mention of the alleged sexual abuse of her sisters. L.Z.'s hearsay statement identifying Mr. Olesen as her abuser was therefore irrelevant to the charges against Mr. Olesen for the sexual abuse of A.T. and L.S.

It is, of course, the duty and responsibility of the jury to keep separate the evidence regarding the offenses with which a defendant is charged. In fact, the trial court in Mr. Olesen's case instructed the jury on this duty, and "juries are presumed to follow their instructions." *Richardson v. Marsh*, 481 U.S. 200, 211 (1987). We therefore must assume that the jury did not consider L.Z.'s statement identifying Mr. Olesen when it returned guilty verdicts on the counts of sexual abuse of A.T. and L.S. and that it convicted Mr. Olesen on those counts based solely on the testimony of L.S., as it was of course permitted to do. We conclude, accordingly, that the admission of L.Z.'s hearsay statement did not contribute to the jury's verdicts on the four counts with respect to A.T. and L.S., and its admission was thus harmless error as to those counts.

IV.

Mr. Olesen raises several claims of ineffective assistance of counsel. First, he maintains that he was prejudiced by his trial counsel's failure to object to the opinion

testimony of the prosecution's rebuttal witness, Angini Tapscott, a psychologist who had counseled L.S. Ms. Tapscott was allowed, without objection, to offer her opinion that L.S. would not fabricate a story involving sexual abuse. Mr. Olesen contends that his trial counsel should have objected to this testimony because it impermissibly infringed upon the jury's exclusive function of determining L.S.'s credibility. *See State v. Thomas*, 381 N.W.2d 232, 239 (S.D. 1986); *see also United States v. Azure*, 801 F.2d 336, 339-41 (8th Cir. 1986).

We agree with Mr. Olesen that given the state of South Dakota's evidentiary rules and case law at the time of his trial, a reasonably prudent lawyer would have objected to Ms. Tapscott's opinion testimony. We do not believe, however, that that deficient performance by Mr. Olesen's trial counsel rendered "the result of the trial unreliable or the proceeding fundamentally unfair," as is required before we can set aside a conviction on ineffective assistance of counsel grounds. *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993).

Ms. Tapscott's opinion as to L.S.'s credibility was offered on rebuttal after the defense had introduced a parade of witnesses who attacked L.S.'s credibility. Ms. Tapscott's testimony was quite brief, and Mr. Olesen's trial counsel effectively cross-examined her. Ms. Tapscott's testimony concerning L.S.'s credibility, moreover, was not mentioned by either the prosecution or the defense in closing arguments, and the trial court instructed the jury that it was the sole judge of the witnesses' credibility. We conclude that the failure of Mr. Olesen's trial counsel to object to Ms. Tapscott's opinion testimony did not render the trial and verdict unfair or unreliable, and Mr. Olesen therefore is not entitled to relief on this ground.

Mr. Olesen raises two additional claims of ineffective assistance of counsel. First, he contends that his trial counsel was constitutionally ineffective because he failed to contact potential defense witnesses and adequately to prepare those witnesses who were called to testify on Mr. Olesen's behalf. Second, he maintains that his trial

counsel did not adequately cross-examine L.S. about the inconsistencies between her testimony before the grand jury and her testimony at trial. After carefully reviewing the record, we believe that trial counsel's deficient performance, if any, did not render "the result of the trial unreliable or the proceeding fundamentally unfair," *id.* Mr. Olesen therefore is not entitled to habeas relief on these ineffective assistance of counsel claims.

V.

For the foregoing reasons, we reverse the district court's denial of habeas corpus relief and remand with instructions to grant Mr. Olesen's petition for a writ of habeas corpus on his conviction with respect to unlawful sexual contact with L.Z., and we affirm the district court's denial of habeas corpus relief as to the remaining counts. We remand the case to the district court for the entry of a proper judgment.

A true copy.


Attest:


CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.