# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-3902
_____

United States of America,　　　　　*
　　　　　　　　　　　　　　　　　*
　　　　　　　Appellee,　　　　　　*
　　　　　　　　　　　　　　　　　*　Appeal from the United States
　　　v.　　　　　　　　　　　　　*　District Court for the
　　　　　　　　　　　　　　　　　*　District of Minnesota.
Stuart Lee Sumner,　　　　　　　*
　　　　　　　　　　　　　　　　　*
　　　　　　　Appellant.　　　　　*

_____

Submitted:　October 19, 1999

Filed:　March 2, 2000

_____

Before WOLLMAN, Chief Judge, HEANEY, and LOKEN, Circuit Judges.

_____

WOLLMAN, Chief Judge.

Stuart Lee Sumner, an enrolled member of the Red Lake Band of Chippewa Indians, appeals his convictions on two counts of abusive sexual contact, in violation of 18 U.S.C. § 2244(a)(1), and on one count of aggravated sexual abuse of a child, in violation of 18 U.S.C. § 2241(c).  We reverse.

# I.

This is Sumner's second appearance before us. In <u>United States v. Sumner</u>, 119 F.3d 658, 660-61 (8th Cir. 1997) (<u>Sumner I</u>), we reversed his convictions on the same charges, holding that the erroneous admission of prior-act evidence under Federal Rule of Evidence 404(b) constituted a non-harmless error.

These proceedings stem from Sumner's interaction with D.D., the then six-year-old daughter of his girlfriend. Sumner was accused of touching D.D.'s genital area, both when she was clothed and unclothed, and of causing D.D. to touch him sexually. D.D. was unable to testify at trial.

# II.

Sumner first contends that the district court abused its discretion in admitting under Rule 803(4) of the Federal Rules of Evidence D.D.'s statements to Dr. Darryl Zitzow, who was at that time working as an Indian Health Service clinical psychologist on the Red Lake Indian Reservation. Dr. Zitzow first examined D.D. on May 2, 1995, after she had been placed in foster care following her mother's arrest for neglect. The following is Dr. Zitzow's description of the manner in which he established his doctor/patient relationship with D.D.:

Q. As a general rule, before you start an assessment, do you introduce yourself to the child?

A. Yes, I do (nods head up and down).

Q. How do you do that?

A. I tell children that I'm a doctor, but I'm a different kind of doctor, I'm a doctor that will talk to children, I'm a doctor that usually

-2-

doesn't physically examine children, I'm a doctor that will sometimes engage in playing games with the children.

Q. Okay. Did you introduce yourself that way to [D.D.]?

A. Yes.

Q. Did you determine whether or not she understood your role as doctor?

A. Yes.

Q. Okay. Now you had indicated that the first thing you do in an assessment -- can you kind of briefly review your first step in the assessment process?

After playing some magic tricks with D.D., Dr. Zitzow, using anatomically correct dolls, asked D.D. to point to various body parts to gauge her knowledge and then to use the dolls herself to demonstrate what sexual activity had occurred. Based upon the foregoing foundational testimony, Dr. Zitzow was permitted to testify that D.D. had stated that Sumner had touched her sexually and had forced her to touch him.

The admission of out-of-court statements of child victims in sexual abuse cases is governed by the holding in Idaho v. Wright, 497 U.S. 805 (1990). To satisfy the requirements of the Confrontation Clause of the Sixth Amendment, such statements must bear adequate "indicia of reliability," either because they fall within a "firmly rooted hearsay exception" or because they are supported by a showing of particularized guarantees of trustworthiness. See id. at 816. Rule 803(4), which allows the admission of statements made for the purposes of obtaining medical diagnosis and treatment, is widely accepted as a firmly rooted hearsay exception. See White v. Illinois, 502 U.S. 346, 355 n.8 (1992).

We review the district court's decision to admit evidence under Rule 803(4) under an abuse-of-discretion standard. See United States v. Beaulieu, 194 F.3d 918, 921 (8th Cir. 1999). We apply a two-part test to determine whether a statement meets the standards of admission under Rule 803(4): "first, the declarant's motive in making the statement must be consistent with the purposes of promoting treatment; and second, the content of the statement must be such as is reasonably relied on by a physician in treatment or diagnosis." United States v. Renville, 779 F.2d 430, 436 (8th Cir. 1985). In Olesen v. Class, 164 F.3d 1096 (8th Cir. 1999), we held to be inadmissible under Rule 803(4) a statement identifying the sexual abuser made by a five-year-old to a pediatrician who had told the child only "what was going to happen" during his physical examination of her. The doctor had not discussed why the questions he asked were important to the diagnosis and treatment and why it was important for the child to tell the truth regarding the identify of the abuser. See id. at 1098. We explained that it must be shown that the child understands the "medical significance of being truthful," i.e., the role of the medical health professional in trying to help or heal her, which triggers the motivation to be truthful. See id.

We conclude that D.D.'s statements to Dr. Zitzow are as wanting in admissibility as those found inadmissible in Olesen. Although Dr. Zitzow explained that he was a doctor, he did not discuss with D.D. the need for truthful revelations or emphasize that the identification of her abuser was important to Dr. Zitzow's attempts to help her overcome any emotional trauma resulting from the abuse to which she had been subjected. There is no clear evidence in the record that D.D. knew that she had been brought to Dr. Zitzow for medical diagnosis or possible treatment for any medical or emotional problems. Dr. Zitzow's cryptic "yes" in response to the question whether he had determined whether D.D. understood his role as a doctor constituted an inadequate ground upon which to base a finding that D.D. in fact understood that role. Apart from its inherent ambiguity, the answer is conclusory rather than explicatory, offering as it does nothing by way of detail that would enable the trier of fact to be satisfied that D.D. in fact had an understanding of Dr. Zitzow's role. Cf. United States

-4-

v. Barrett, 8 F.3d 1296, 1300 (8th Cir. 1993) (doctor may testify to non-testifying child's understanding if the testimony "adequately demonstrates [the child's] level of understanding"); Ring v. Erickson, 983 F.2d 818, 820 n.2 (8th Cir. 1993) (parents or physician may testify that non-testifying child knew and understood doctor's role). Indeed, the evidence regarding D.D.'s understanding cuts against a finding that D.D. understood that role, for D.D. told a therapist in June of 1995 that she went to see Dr. Zitzow just "to talk," giving no indication that she understood that the doctor was examining her or trying to help her. Accordingly, we hold that the prosecution failed to establish that D.D.'s statements to Dr. Zitzow satisfied the requirements of Rule 803(4).

We look, then, to see whether there are particularized guarantees of trustworthiness surrounding D.D.'s statements that satisfy the Confrontation Clause and thus render them admissible. In determining whether a statement meets this test of admissibility, "we examine its trustworthiness in light of the totality of the circumstances that surrounded its making, without regard to other evidence in the record that might corroborate the statement." Id. Some of the factors that are appropriate for courts to consider include the spontaneity of the statements, their consistent repetition, and the child's lack of a motivation to fabricate. See Barrett, 8 F.3d at 1300. In Olesen we discussed potential indicia of reliability and found too few. See 164 F.3d at 1100. There, the child did not testify at trial, a fact which we noted presents a far greater obstacle to admitting hearsay statements in light of the defendant's lack of opportunity to confront and cross-examine his accuser. See id. at 1099. The record in Olesen revealed few indications of the trustworthiness of the child's statements to the doctor. See id. at 1100. The evidence tended to show the contrary; for example, the doctor's testimony indicated that the child mostly nodded in response to questions posed during the examination and offered little description or detail. See id. at 1099. Accordingly, we held that under the analysis required by Wright, the prosecution had not shown that the statement had sufficient guarantees of

trustworthiness, and that its admission therefore violated the Confrontation Clause. See id. at 1100.

As noted earlier, D.D. did not testify at trial. The government argues that because an expert witness testified that Dr. Zitzow's interviewing techniques were proper, D.D.'s statements were sufficiently trustworthy to be admitted at Sumner's trial. We do not agree. As noted above, D.D.'s motive in speaking to Dr. Zitzow is unclear. There is also some question of the spontaneity of the statements. It appears that D.D. answered many questions by responding "yes" or simply pointing, rather than by responding with the spontaneous revelations indicative of trustworthiness. We conclude, therefore, that the circumstances surrounding D.D.'s statements to Dr. Zitzow lack the requisite guarantees of trustworthiness and indicia of reliability. Accordingly, the admission of D.D.'s statements through Dr. Zitzow violated Sumner's Confrontation Clause rights.

There remains the question whether the admission of D.D.'s statements constituted harmless error. We conclude that it did not. In Sumner I, we noted several circumstances that indicated that the evidentiary error involved was prejudicial and not harmless, including that there was some uncertainty about whether the abuse had occurred, that the victim failed to testify, that there was some evidence of the victim's recantation, and that the defense strenuously argued allegations of improper coaching and interviewing techniques. See 119 F.3d at 661. Some of those factors are present here. Without Dr. Zitzow's testimony regarding D.D.'s statements, the government had very little evidence with which to prosecute: no physical evidence, no witnesses to any abuse, and a victim who would not testify. In light of these circumstances, the error in admitting Dr. Zitzow's testimony cannot be said to be harmless, because it was crucial to the government's case and thus must have had more than a slight influence on the verdict. See Beaulieu, 194 F.3d at 921.

**III.**

Sumner contends that the district court erred when it admitted evidence of prior acts of child molestation under Rule 414, which provides that when a "defendant is accused of an offense of child molestation, evidence of the defendant's commission of another offense . . . is admissible, and may be considered for its bearing on any matter to which it is relevant." Fed. R. Evid. 414(a). In <u>Sumner I</u>, we held that the district court is required to conduct the balancing test set forth in Rule 403 when determining whether to admit evidence under Rule 414. <u>See</u> 119 F.3d at 661. The evidence in question involved events that occurred at a party at a private residence within a year of the events giving rise to this prosecution. Sumner allegedly groped a thirteen-year-old babysitter's thigh while sitting next to her on a couch. He then patted a sleeping seven-year-old girl when he went upstairs to find a place to lie down.

The district court conducted the Rule 403 balancing analysis and found that the prior-act evidence was not substantially more prejudicial than probative. We conclude that the district court did not abuse its discretion in admitting the evidence, for the prior acts were relatively recent in time and were substantially similar to the charged assaults, while the prejudice was that which is presented by all propensity evidence in cases of child sexual abuse. <u>See</u> <u>United States v. LeCompte</u>, 131 F.3d 767, 769-70 (8th Cir. 1997).

In light of our holding regarding the admission of Dr. Zitzow's testimony, it is unlikely that the issue raised by Sumner regarding improper impeachment will arise on retrial. Likewise, our holding renders moot Sumner's challenge to the computation of his sentence.

**IV.**

The judgment of conviction is reversed, and the case is remanded to the district court for new trial.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.