BRIGHT, Circuit Judge,
dissenting.
I dissent. When an automobile driven at a high rate of speed rolls over, who knows where the occupants’ bodies will end up? The majority’s position fails on that uncertainty. Although the majority suggests otherwise, the prosecution produced no strong evidence that Engesser rather than Finley was the driver. No observers witnessed the accident, and the parties presented inconclusive circumstantial evidence. Both Finley and Engesser sustained injuries on the right sides of their bodies, which would be consistent with injuries suffered by one in the passenger seat. One witness stated that authorities found Finley with her legs under the dash and her face turned toward the driver’s side; yet another testified that her legs pointed to the back of her car and her head toward the front.
In addition, a highway patrol accident reconstructionist testified that in a high-speed rollover bodies can be thrown “all *741 over the place in [the] vehicle.” More than one witness testified that, during a rollover, a passenger could be ejected through the passenger-side window and end up on the driver’s side of the car. Further, a witness testified it would have been possible for the driver of a vehicle to end up in the passenger’s seat during a high-speed rollover. Even the state’s forensic expert .could not opine whether Finley was the passenger or the driver.
Given the closeness of the case and the uncertainty of the evidence, I must respectively dissent. The defendant in my opinion was unjustly convicted. He deserves a new trial. I would hold that the state court made a decision that was contrary to or involved an unreasonable application of clearly established federal law when it determined that the admission of Trooper Fox’s testimony was harmless error and that Engesser did not receive ineffective assistance of counsel. I would also hold that the state violated Engesser’s due process rights by taking a blood test without probable cause.
First, Engesser properly demonstrated that the state court’s decision was contrary to or involved an unreasonable application of established federal law. Everyone concedes that the admission of Trooper Fox’s testimony violated established law everywhere, even in the Supreme Court. The majority concludes that, although troublesome, this error does not require a new trial because it was harmless. The majority applies the wrong harmless-error standard.
In Brecht v. Abrahamson, 507 U.S. 619, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993), the United States Supreme Court made clear that the harmless-error standard to apply in habeas corpus proceedings is the standard enunciated in Kotteakos v. United States, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946). In applying the Kot-teakos standard, “[t]he habeas court cannot ask only whether it thinks the petitioner would have been convicted even if the constitutional error had not taken place .... It requires a reviewing court to decide that ‘the error did not influence the jury,’ and that ‘the judgment was not substantially swayed by the error.’ ” Brecht, 507 U.S. at 642, 113 S.Ct. 1710 (Stevens, J., concurring) (citing Kotteakos v. United States, 328 U.S. 750, 764-65, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946)).
This court cannot conclude that the error in admitting Trooper Fox’s testimony did not influence the jury or sway the verdict. Essentially, the prosecution made Trooper Fox its lie detector to counter the defendant’s claim that he was not the driver. No other evidence could definitively prove whether Engesser was truthful in claiming he was not the driver. A jury likely would give great weight to the opinion of a law enforcement officer, particularly a highway patrol officer. This is especially true when, as here, the patrol officer indicated that he had gained the ability to assess character and credibility through the sheer number of interviews he has conducted.
The Supreme Court directs us to discern “what effect the error ... reasonably ... had upon the jury’s decision.” Kotteakos, 328 U.S. at 764, 66 S.Ct. 1239. It is quite clear that the admission of Trooper Fox’s testimony had a substantial effect on the jury’s decision. Engesser deserves a new trial.
Second, the state court should have held that Engesser received ineffective assistance of counsel. Its decision was contrary to or involved an unreasonable application of federal law. Any trial lawyer worth his salt should know the rules of evidence and how to make a proper objection. The Trooper Fox objection, “not relevant”, was off the mark. The evidence *742 may have been relevant, but all would agree it was inadmissible. The Fox opinion never should have been admitted into evidence. The defense counsel made the wrong objection, and in doing so did not call the trial court’s attention to the great harm in having the witness, a highway patrol officer whose testimony would have considerable credibility, opine that the defendant lied. Not only did Engesser’s lawyer not properly object to this testimony when it was first admitted, he failed to say anything at all when it was re-emphasized in closing argument. An effective lawyer would never have allowed this error in the first instance, and certainly would not have allowed it to remain as evidence of record.
The majority acknowledges that the state court may have been incorrect in not following Olesen v. Class, 164 F.3d 1096 (8th Cir.1999), but holds that Engesser’s ineffective assistance claim nonetheless fails because Engesser does not show prejudice. I disagree. Because the parties presented such evenly divided evidence, Trooper Fox produced pivotal testimony. Had Engesser’s lawyer made the proper objection and the court excluded the testimony, “there is a reasonable probability that ... the result of the proceeding would have been different.” Strickland v. Washington, 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
Finally, the state court improperly determined that the police had probable cause to draw Engesser’s blood. Although Trooper Fox may have had probable cause to believe Engesser had been drinking, because he exuded a strong odor of alcohol, he lacked probable cause to believe that Engesser drove the Corvette. At the time he made the decision to draw Enges-ser’s blood, Trooper Fox knew that authorities had found Engesser on the driver’s side of the car and that they had extracted Finley from the more damaged, passenger’s side of the car and pronounced her dead at the scene. He also knew that the Corvette had been traveling at a high rate of speed. Given the knowledge that bodies can be thrown all over the place in high-speed rollovers, the placement of Enges-ser’s and Finley’s bodies after the accident would not have given Trooper Fox probable cause to believe Engesser was driving the Corvette. Because no probable cause existed, Trooper Fox violated Engesser’s Fourth Amendment rights when he drew Engesser’s blood without a warrant or consent.
This case presents a flawed conviction. In the interests of justice and under the law, Engesser is entitled to relief under the writ of habeas corpus as it now exists.