Keith Richard **DOLNY**, Appellant,

v.

Robert A. **ERICKSON**, Warden, Appellee.

No. 93–2904.

United States Court of Appeals,
Eighth Circuit.

Submitted May 10, 1994.

Decided Aug. 19, 1994.

Jack S. Nordby, Minneapolis, MN, argued, for appellant.

Charles A. Diemer, Hastings, MN (argued) (James C. Backstrom, on the brief), for appellee.

Before RICHARD S. ARNOLD, Chief Judge, LIVELY,* Senior Circuit Judge, and FAGG, Circuit Judge.

RICHARD S. ARNOLD, Chief Judge.

Keith Richard Dolny was convicted of criminal sexual assault against his former stepdaughter, K.S., in Minnesota state court, and sentenced to 43 months in prison. He filed a direct appeal and an appeal from the trial court's refusal to grant post-conviction relief. The Minnesota Court of Appeals con-

solidated his claims and then rejected them. Dolny did not seek review in the Minnesota Supreme Court; instead, he sought federal habeas corpus relief under 28 U.S.C. § 2254. A magistrate judge recommended that the petitioner's claim be denied,[1] and the District Court[2] agreed. Dolny now appeals to this Court.

The petitioner claims that his Sixth Amendment Confrontation–Clause rights were violated by the introduction of out-of-court statements made by K.S. Dolny contends that these hearsay statements were introduced without sufficient findings as to their reliability and without opportunity for effective cross-examination of the child, whose testimony was presented by videotape.[3] The state replies that Dolny is procedurally barred from asserting his claims, and that, in any event, the trial court's reliability findings were sufficient, particularly given that the child testified in detail and was subject to questioning by petitioner's trial counsel. We conclude that we may properly consider Dolny's claims on the merits, but affirm the District Court's denial of relief.

I.

The hearsay statements which are the subject of this appeal consist of comments made by the child to four individuals who appeared as witnesses at the trial: her mother, Ms. Leslie Martin; her treating psychologist, Dr. Randall Pottebaum; a police officer, Detective Clark Holden; and a county child-protection worker, Mr. Rick Morrissey. These comments, some recorded on audiotape, were made when K.S. was six years old. The statements alleged acts of abuse committed by Dolny on K.S. when the child was four.

Before the statements were allowed into

* The Hon. Pierce Lively, Senior United States Circuit Judge for the Sixth Circuit, sitting by designation.

1. The Hon. Jonathan Lebedoff, United States Magistrate Judge for the District of Minnesota.

2. The Hon. Diana E. Murphy, Chief Judge, United States District Court for the District of Minnesota.

3. Dolny does not challenge the introduction of K.S.'s videotaped testimony per se (because he failed to do so in the state courts), but contends that the way in which the child's testimony was presented is relevant to the issue of whether receiving the out-of-court statements into evidence was harmless error.

evidence, K.S. testified;[4] she appeared first in a pre-trial hearing, then briefly in front of the jury, and, finally, by means of videotape (because she was afraid of Dolny and, to a lesser extent, the jurors). At trial, on direct examination, K.S. initially did not recall many significant details of the abuse, other than Dolny's having sat on her and threatened her. She could not remember how many times the abuse occurred, whether it hurt, how long the incident or incidents lasted, or how much clothing either she or Dolny were wearing. She testified that she remembered talking to her mother and to the police, but she could not remember what she had said to the police until she saw her statement. Eventually, after reading a portion of her statement to the police, she testified in some detail about the incidents of abuse. K.S. also explained why she had given conflicting statements about where the abuse took place within the residence, and why she waited as long as she did to tell anyone.

On cross-examination, defense counsel began by asking K.S. what had happened to her two front teeth; she replied that she had lost them and had put them under her pillow for the tooth fairy. She agreed that it had been a long time since she lived with Dolny. Counsel asked her how many bedrooms and bathrooms there had been in the residence, and whether K.S. had ever bathed with her older brothers, which the child denied. When asked if she goes to see her father, K.S. said that she did and that she enjoyed doing so. Counsel then asked K.S. about her mother's work, and asked who took care of K.S.—then and now—in her mother's absence (during the period of alleged abuse it was Dolny; now it is her brothers). K.S. was then asked if she knew a man named Buzz, and if he was a friend of her mother's; the child answered affirmatively.

Upon further questioning, K.S. agreed that she had spoken with Detective Holden and social worker Morrissey, as well as her mother, about the events to which she had testified. However, she denied having spoken about the abuse to her father. K.S. indicated that she had talked with the prosecutor approximately three times. Finally, defense counsel asked K.S. whether she had bad dreams about Keith doing something to her brothers, to which she replied that she did, and that the dreams included her. She agreed that dreams are not real, but that sometimes she believes them, and they scare her.

Subsequently, during the course of the trial, the Court ruled on the admissibility of the contested statements. The judge made individual findings concerning the reliability of each, prior to its admission. To a large extent, the judge looked to the reliability of the hearsay witness, as opposed to the child's statement, and also considered the consistency among the various statements. In each instance, for substantially similar reasons, the statements were admitted.

## II.

Minnesota urges us to reject Dolny's claim without reaching the merits. For its principal reason, the state points to the statute setting out federal habeas corpus remedies, which provides that "[a]n applicant shall not be deemed to have exhausted the remedies available in the courts of the State ... if he has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c). Minnesota contends that Dolny is guilty of procedural default, because he did not seek review in the Minnesota Supreme Court, and the time for seeking such review has expired. The magistrate judge, on the other hand, ruled that Dolny was required to pursue only his appeal as of right, and did not have to petition for review by Minnesota's highest court, because such review is discretionary. Minn.R.Civ.App.P. 117, subd. 2.

The question of whether a criminal defendant must seek discretionary review from a state's highest court prior to requesting federal habeas relief remains open in this circuit, although we have strongly hinted that such effort is not necessary. *Evans v. Dowd*, 932 F.2d 739, 740–41 (8th Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 385, 116 L.Ed.2d 335 (1991); *Brown v. Armontrout*, 898 F.2d 84, 86–87 & n. 5 (8th Cir.), *cert.*

---

4. By this time the child was seven years old.

Pre-trial Tr. 3.

*denied,* 498 U.S. 868, 111 S.Ct. 186, 112 L.Ed.2d 149 (1990). Other circuits are split. *Compare Jennison v. Goldsmith,* 940 F.2d 1308, 1310 (9th Cir.1991) (per curiam) (petitioner must seek discretionary review in Arizona state courts; "the right to raise" an issue does not entail a right to have that issue considered on its merits) *and Richardson v. Procunier,* 762 F.2d 429, 431–32 (5th Cir.1985) (petitioner must seek discretionary review in the Texas Court of Criminal Appeals) *with Buck v. Green,* 743 F.2d 1567, 1569 (11th Cir.1984) (for purposes of § 2254, Georgia defendant who lost appeal as of right need not petition the Georgia Supreme Court for *certiorari,* given that court's limited jurisdiction).

In *Buck,* the Eleventh Circuit noted that "the Supreme Court of Georgia does not ordinarily review assignments of error from a judgment of the Court of Appeals," and so did not offer a practical remedy to the petitioner. 743 F.2d at 1569. The Eleventh Circuit then pointed out that § 2254's requirements " 'are rooted in the doctrine of comity,' " and therefore should not be interpreted so as " 'to burden the state system with meaningless petitions for relief to forums which are not intended by state law to consider them.' " *Id.* at 1569, quoting *Williams v. Wainwright,* 452 F.2d 775, 777 (5th Cir.1971). Here, the right of a petitioner to have his claim considered by Minnesota's Supreme Court is unquestionably restricted. See Minn.R.Civ.App.P. 117, subd. 2. ("Review of any decision of the Court of Appeals is discretionary with the Supreme Court.") Limited, though non-exclusive, criteria are prescribed for determining which cases to review.[5] In practice, less than 25%

of petitions for review are granted. Popovich and Miller, *Obtaining Review in the Minnesota Supreme Court,* 14 Hamline L.Rev. 117, 128 (1990). Thus, the practice in Minnesota is similar to that in Florida, where the Court of Appeal decision is usually "the end of the road." *Williams v. Wainwright,* 452 F.2d at 776.

We believe that "[t]he right ... to raise" an issue referred to in § 2254 means more than a mere opportunity to seek leave to present an issue; it means a realistic, practical chance to present an issue and have it considered on the merits. Furthermore, we agree with the Eleventh Circuit that concerns of comity are best met by not requiring fruitless and burdensome petitions. An analogy may be found in *Fay v. Noia,* 372 U.S. 391, 435, 83 S.Ct. 822, 847, 9 L.Ed.2d 837 (1963), which dispensed with the requirement that petitioners had to seek *certiorari* from the United States Supreme Court before going into federal habeas (overruling *Darr v. Burford,* 339 U.S. 200, 70 S.Ct. 587, 94 L.Ed. 761 (1950)). Thus, we hold that, given the limited jurisdiction of the Minnesota Supreme Court, when a petitioner has presented his claims to the State's Court of Appeals, the petitioner need not take the additional step of seeking discretionary review prior to requesting federal habeas relief. When Dolny presented his claims to the Minnesota Court of Appeals, he afforded "the State a full and fair opportunity to address and resolve the claim on the merits." *Keeney v. Tamayo–Reyes,* —— U.S. ——, ——, 112 S.Ct. 1715, 1720, 118 L.Ed.2d 318 (1992). Therefore, the District Court was correct in concluding that Dolny could proceed with his petition for habeas corpus relief.[6]

---

**5.** Discretionary Review. Review of any decision of the Court of Appeals is discretionary with the Supreme Court. The following criteria may be considered:

(a) the question presented is an important one upon which the Supreme Court should rule; or
(b) the Court of Appeals has ruled on the constitutionality of a statute; or
(c) the lower courts have so far departed from the accepted and usual course of justice as to call for an exercise of the Supreme Court's supervisory powers; or
(d) a decision by the Supreme Court will help develop, clarify, or harmonize the law; and

(1) the case calls for the application of a new principle or policy; or
(2) the resolution of the question presented has possible statewide impact; or
(3) the question is likely to recur unless resolved by the Supreme Court.
Minn.R.Civ.App.P. 117, subd. 2.

**6.** Our decision in *Kolocotronis v. Holcomb,* 925 F.2d 278 (8th Cir.1991) does not preclude this result. In that case the only issue before the court was whether the petitioner must continually seek his freedom from a state hospital for habeas corpus exhaustion purposes, or whether one attempt would suffice. The need to seek

■ Minnesota also contends that Dolny is procedurally barred under *Coleman v. Thompson*, 501 U.S. 722, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991), because he did not raise the Sixth Amendment Confrontation Clause issue in the Minnesota Court of Appeals. Even if an issue does not appear on the face of the pleadings, however, the issue is not barred from consideration if it was decided by the court. See *Ulster County Court v. Allen*, 442 U.S. 140, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979). In its order denying postconviction relief, the trial court explicitly ruled that "out-of-court statements made by the six-year-old victim in this case ... were legally and properly admitted pursuant to Minnesota Statute § 595.02, subd. 3, and in full compliance with Petitioner's rights under both the Minnesota *and United States Constitution*." (Emphasis supplied.) The trial court's order was accompanied by a memorandum referring to *Idaho v. Wright*, 497 U.S. 805, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990), a Sixth Amendment Confrontation Clause case. Next, the Minnesota Court of Appeals held that the evidence was properly admitted; the opinion referred to reliability factors discussed in *Wright* and adopted by *State v. Lanam*, 459 N.W.2d 656 (Minn.1990), *cert. denied*, 498 U.S. 1033, 111 S.Ct. 693, 112 L.Ed.2d 684 (1991). Thus, even if Dolny did not expressly invoke the Sixth Amendment, the Minnesota courts considered the issue, and he is not precluded from pursuing it here.

■ Finally, the State contends that Dolny failed to allege actual prejudice from any trial error. See *Brecht v. Abrahamson*, — U.S. ——, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993). However, in his brief, Dolny asserts that his conviction "is based *entirely* on out-of-court statements, of no demonstrated reliability, by hearsay witnesses and videotape." Appellant's Br. 35 (emphasis original). This statement is a sufficient allegation of prejudice. Having rejected the State's procedural contentions, we now assess Dolny's substantive claims.

### III.

■ Dolny contends that the trial court violated his Sixth Amendment Confrontation Clause rights by admitting the hearsay statements. As this court held in *United States v. Spotted War Bonnet*, 933 F.2d 1471 (8th Cir. 1991), *cert. denied*, — U.S. ——, 112 S.Ct. 1187, 117 L.Ed.2d 429 (1992), where out-of-court statements are admitted pursuant to a hearsay exception, and the declarant also testifies, the Confrontation Clause inquiry is whether the trial provided an opportunity for effective cross-examination. *Id.* at 1474–75.[7]

■ The petitioner argues that this Court's decision in *United States v. Balfany*, 965 F.2d 575 (8th Cir.1992), stands for the proposition that, even if the child testifies herself, the court must make reliability determinations just the same as when the child does not appear. The petitioner reads *Balfany* too broadly. The relevant portion of *Balfany* held that hearsay statements made by a complaining child were simply not admissible under the residual hearsay exception of the Federal Rules of Evidence, Fed.R.Evid. 803(24). 965 F.2d at 581–82.[8] The petitioner does not appear to contest the trial court's finding that the evidence satisfied the relevant Minnesota evidence statute, Minn.Stat. § 595.02, subd. 3.[9] Therefore, the only ques-

discretionary review was not at issue, and language in the opinion on this subject is dictum.

**7.** Because the child testified, neither *Idaho v. Wright, supra,* nor *Ring v. Erickson*, 983 F.2d 818 (8th Cir.1993), is applicable.

**8.** The defendant, however, was not entitled to reversal because the Court concluded that the error was harmless. 965 F.2d at 582.

**9.** The trial court's findings on reliability might not have satisfied *Idaho v. Wright,* in the absence of the child's testimony, because the findings focused on the reliability of the persons to whom the child spoke rather than on the reliability of the child herself. However, these findings appear to have been in conformity with the requirements of the Minnesota statute, which provides as follows:

Certain out-of-court statements admissible. An out-of-court statement made by a child under the age of ten years ... alleging, explaining, denying, or describing any act of sexual contact or penetration performed with or on the child or any act of physical abuse of the child ... by another, not otherwise admissible by statute or rule of evidence, is admissible as substantive evidence if:

tion before us is whether the Confrontation Clause has been violated. *Spotted War Bonnet* controls.

We are mindful that "simply putting a child on the stand, regardless of her mental maturity, is not sufficient to eliminate all Confrontation Clause concerns." *Spotted War Bonnet*, 933 F.2d at 1474. On the other hand, "a perfectly satisfactory cross-examination is not required by the Clause, and a witness who cannot remember the details of statements she has made in the past can still be sufficiently available for cross-examination to satisfy the constitutional requirement." *Ibid.* In fact "a witness's inability to 'recall either the underlying events that are the subject of an extra-judicial statement or previous testimony or recollect the circumstances under which [an out-of-court] statement was given, does not have Sixth Amendment consequence.'" *Ibid.*, quoting *United States v. Owens*, 484 U.S. 554, 558, 108 S.Ct. 838, 842, 98 L.Ed.2d 951 (1988). The key question is whether there is "an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Ibid.* (citations omitted) (emphasis original).

■ In the course of Dolny's trial, the child testified in court, and defense counsel cross-examined her at length. Counsel queried K.S. on several subjects potentially bearing on the child's credibility as well as potential theories for exculpation, including whether K.S. bathed with her brothers, whether K.S. had ever discussed the incidents with her father, and whether the child had spoken with any of the witnesses about the alleged abuse. Moreover, defense counsel established that it had been quite a long time since the alleged incidents occurred, that K.S. visits her father, and that her mother had a friend named Buzz. K.S. also stated she had spoken with the prosecutor on three separate occasions prior to trial. Prompted by defense counsel, K.S. acknowledged that she

believes in the tooth fairy, and that she believes her dreams, which scare her. In general, the transcript indicates the child's answers were responsive and coherent.

During cross-examination, the defense did not ask K.S. to testify, to any substantial degree, on the acts of abuse themselves. However, such territory would have been well within the scope of the prosecution's direct examination. Despite her initial difficulties in remembering details, ultimately K.S. testified extensively on the abuse. Apparently defense counsel elected to use the cross-examination as a means to discredit K.S. generally, rather than pick apart specific allegations. This, however, is a matter of trial strategy; it does not demonstrate that Dolny lacked an *opportunity* for effective cross-examination. We hold that Dolny's Sixth Amendment Confrontation Clause rights were not violated by the introduction of the evidence of out-of-court statements made by the child victim.

IV.

The judgment of the District Court is affirmed.

(a) the court or person authorized to receive evidence finds, in a hearing conducted outside of the presence of the jury, that the time, content, and circumstances of the statement and the reliability of the person to whom the statement is made provide sufficient indicia of reliability; and

(b) the child ... testifies at the proceedings ... and

(c) the proponent of the statement notifies the adverse party ... sufficiently in advance ...

Minn.Stat.Ann. § 595.02, subd. 3 (1988).