John Duane AYERS, Petitioner,

v.

David DOTH, Commissioner of Human Services, Respondent.

Civ. No. 98–1563 (PAM/RLE).

United States District Court, D. Minnesota.

June 1, 1999.

Brain Cook Southwell, Faulkner & Faulkner, Minneapolis, MN, for petitioner.

Steven J. Lokensgard, Attorney General, St Paul, MN, for respondent.

## ORDER

MAGNUSON, Chief Judge.

Based upon the Report and Recommendation of United States Magistrate Judge Raymond L. Erickson, and after an independent review of the files, records and proceedings in the above-titled matter, it is—

ORDERED:

That the Petition for Writ of Habeas Corpus [Docket No. 1] is denied, without prejudice.

## REPORT AND RECOMMENDATION

ERICKSON, United States Magistrate Judge.

At Duluth, in the District of Minnesota, this 6th day of May, 1999.

### I. *Introduction*

This matter came before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of Title 28

U.S.C. § 636(b)(1)(B), upon a Petition for a Writ of Habeas Corpus, see, Title 28 U.S.C. § 2254, which alleges that the Petitioner is being illegally detained by the Respondent for reasons which are violative of his rights under the Constitution, laws or Treaties of the United States.

The Petitioner has appeared by Brian C. Southwell, Esq., and the Respondent has appeared by Steven J. Lokensgard, Assistant Minnesota Attorney General.

For reasons which follow, we recommend that the Petition for a Writ of Habeas Corpus be denied.

II. *Factual and Procedural Background*

The Petitioner, who has been indeterminately committed to the custody of the Minnesota Sexual Psychopathic Treatment Center ("MSPTC"), presents a facial constitutional challenge to the Minnesota Sexually Dangerous Persons Act ("SDP Act") of August 31, 1994, ch. 1, 1995 Minn. Laws 5, 5–9 (1994 first Special Session), codified in relevant part at Minnesota Statutes Sections 253B.02, Subdivision 18c, 253B.185. On November 6, 1996, a Minnesota District Court committed the Petitioner, in accordance with the terms of the Minnesota Commitment and Treatment Act, Minnesota Statutes Chapter 253B. See, *Findings of Fact, Conclusions of Law, and Order Committing Respondent as a Psychopathic Personality and a Sexually Dangerous Person ("Commitment Order"), Resp.'s App.* pp. 1–29. More precisely, the Court committed the Petitioner as a sexual psychopathic personality ("SPP"), under the Psychopathic Personality Commitment Act ("PP Act"), Minnesota Statutes Section 253B.02, Subdivision 18b, and as a sexually dangerous person ("SDP"), under the SDP Act. The Petitioner urges us to vacate his commitment under the SDP Act, because commitment under the SDP Act does not require proof that he suffers from a "mental disorder," or that he "lacks the ability to control his impulses." *Petition* at 5; see also, Minnesota Statutes Section 253B.02, Subdivision 18b(b).

In 1939, the Minnesota Legislature enacted legislation which provided for the civil commitment of any person proved to be a "psychopathic personality." The Statute withstood an immediate constitutional challenge on vagueness and equal protection grounds. See, *Minnesota ex rel. Pearson v. Probate Court of Ramsey County, Minn.*, 309 U.S. 270, 274, 60 S.Ct. 523, 84 L.Ed. 744 (1940); see also, *Nicolaison v. Erickson*, 65 F.3d 109, 111 (8th Cir.1995), cert. denied, 516 U.S. 1125, 116 S.Ct. 939, 133 L.Ed.2d 864 (1996). As it is currently embodied in Minnesota Statutes Section 253B.02, Subdivision 18b, the PP Act defines a "Sexual psychopathic personality" to mean:

> [T]he existence in any person of such conditions of emotional instability, or impulsiveness of behavior, or lack of customary standards of good judgment, or failure to appreciate the consequences of personal acts, or a combination of any of these conditions, **which render the person irresponsible for personal conduct with respect to sexual matters, if the person has evidenced, by a habitual course of conduct in sexual matters, an utter lack of power to control the person's sexual impulses** and, as a result, is dangerous to other persons.

Minnesota Statutes Section 253B.02, Subdivision 18b [emphasis added].

In 1994, the Minnesota Legislature conducted a Special Session to amend the Civil Commitment Statute in order to provide for the civil commitment of "sexually dangerous persons." Under the SDP Act, a "sexually dangerous person" is a person who: (1) has engaged in a course of harmful sexual conduct; (2) has manifested a sexual personality, or other mental disorder or dysfunction; and (3) as a result is likely to engage in acts of harmful sexual conduct. Id., Subdivision 18c(a). Most significantly, and in contrast to the PP Act, the SDP Act declares that, for purposes of commitment as a SDP, "it is not necessary to prove that the person has an inability to

control the person's sexual impulses." Id., Subdivision 18c(b).

On June 13, 1996, while the Petitioner was imprisoned for felonies involving criminal sexual conduct, and was weeks away from his scheduled release date, his prison warden petitioned for his indefinite commitment as an SPP and as an SDP. Hearings were held in July of 1996, at which time the Petitioner was 66 years old. The Petitioner admitted to a history of sexually abusing young boys that dated back at least as far as 1971. The evidence adduced at the commitment Hearing, which included expert psychiatric testimony, as well as a lengthy record of criminal sexual misconduct, convinced the District Court that the Petitioner satisfied the criteria for commitment under the PP Act, and the SDP Act. Among several conclusions which supported the Petitioner's commitment, the Court observed:

> **The record shows by clear and convincing evidence that the [Petitioner] displays an utter lack of power to control his sexual impulses.** This is demonstrated by the nature and frequency of the sexually inappropriate acts perpetrated on young boys, the pervasive quality of the grooming behaviors [Petitioner] used to attract potential victims, the lack of any victim empathy or belief that his actions were wrong, and the complete unwillingness on [Petition-

er]'s part to participate in any sex offender treatment.

*Commitment Order* at 12–13 [emphasis added].

On appeal, the Petitioner claimed, as pertinent, that the SDP Act was unconstitutional on several grounds, including that it violated due process of law. The Court of Appeals affirmed the Petitioner's Commitment Order, and upheld the constitutionality of the SDP Act. See, *In re Ayers*, 570 N.W.2d 21 (Minn.App.1997).[1] The Petitioner did not seek discretionary review by the Minnesota Supreme Court but, instead, sought a Writ of Habeas Corpus from this Court on June 22, 1998. As noted, the Petitioner presents a single claim; namely, that his commitment under the SDP Act violated his right to due process, because the Act, in failing to require proof of a mental disorder or an inability to control his impulses, sets too low a standard for commitment.

The Petitioner's claim is founded upon the Supreme Court's recent decision in *Kansas v. Hendricks*, 521 U.S. 346, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997), where a prison inmate, who was committed as a sexually violent predator under the Kansas Sexually Violent Predator Act, claimed that his commitment violated the Due Process, Double Jeopardy, and Ex Post Facto Clauses of the United States Constitution. As pertinent to the Petitioner's claim, the

---

1. The Court of Appeals' decision, which upheld the constitutionality of the SDP Act against the Petitioner's constitutional challenges, simply followed the Minnesota Supreme Court's holding in *In re Linehan*, 557 N.W.2d 171 (Minn.1996). See, *In re Ayers*, 570 N.W.2d 21, 25 (Minn.App.1997). The Minnesota Supreme Court's *Linehan* decision concluded that, while the SDP Act was a departure from the Psychopathic Personality Commitment Act, the inability to control sexual impulses is not a constitutional prerequisite to commitment, as evidence of a psychological disorder and dangerousness, accompanied by proof that it is "highly likely" for the sexual misconduct to recur, supplies a constitutionally adequate basis for commitment. *In re Linehan*, supra at 183. On December 8, 1997, the United States Su-

preme Court vacated the *Linehan* decision, and remanded the matter to the Minnesota Supreme Court, for further consideration in light of *Kansas v. Hendricks*, 521 U.S. 346, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997). See, *Linehan v. Minnesota*, —— U.S. ——, 118 S.Ct. 596, 139 L.Ed.2d 486 (1997). Pending the State Supreme Court's reconsideration of the issue under *Hendricks*, Minnesota Courts have continued to adhere to the *Linehan* holding, and have sustained the SDP Act against constitutional challenge. See, e.g., *In re Prather*, No. C8-98-847, 1998 WL 887539 at *3 (Minn.App., Dec.22, 1998)("This court, however, will not address this issue further and will continue to treat the statute as constitutional pending final decision on Linehan."), rev. denied (Minn., Feb. 24, 1999).

Supreme Court held, in *Hendricks,* that the requirement of the Kansas Act, for a finding of "future dangerousness," coupled with the existence of a " 'mental abnormality' or 'personality disorder' that makes it difficult, if not impossible, for the person to control his dangerous behavior," adequately protected the inmate's vital, substantive due process right to be free from physical restraint. *Id.* at 358–60, 117 S.Ct. 2072. Although the Court rejected the contention, that due process makes a finding of "mental illness" a prerequisite for civil commitment, and left to State legislators the task of adopting suitable terminology that would comport with due process, *Hendricks* strongly implies that the required mental abnormality prong of a civil commitment standard must incorporate a finding of volitional impairment. The Court explained that "proof of some additional factor, such as 'mental illness' or 'mental abnormality,' " in addition to a showing of dangerousness, "serve[s] to limit involuntary civil confinement to those **who suffer from a volitional impairment rendering them dangerous beyond their control.**" *Id.* at 358, 117 S.Ct. 2072 [emphasis added]. As a consequence, the majority upheld the Kansas Statute because "it set forth criteria relating to an individual's ability to control his dangerousness," and affirmed the inmate's commitment because his "admitted lack of volitional control, coupled with a prediction of dangerousness, adequately distinguishe[d] Hendricks from other dangerous persons who are perhaps more properly dealt with exclusively through criminal proceedings." *Id.* at 360, 117 S.Ct. 2072. To the extent that the SDP Act differs from the Kansas law, by providing that no proof of an inability to control sexual impulses is necessary to sustain civil commitment, the Petitioner urges that the Court vacate his commitment under the SDP Act, as being contrary to the Supreme Court's adjudication of the due process standard in *Hendricks.*

## III. *Discussion*

■ A. *Standard of Review.* "[A] district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a state court only on the ground that he is in custody in violation of the Constitution or laws of the United States." Title 28 U.S.C. § 2254(a). "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the laws, or treaties of the United States." *Estelle v. McGuire,* 502 U.S. 62, 68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991). As a result, before a Writ may issue, the Petitioner must establish that the State's exercise of custody over his person is an affront to the Constitution, a Federal law, or a Federal treaty. *Id.;* see also, *Robinson v. Leapley,* 26 F.3d 826, 829 (8th Cir.1994); *Maynard v. Lockhart,* 981 F.2d 981, 986 (8th Cir.1992); *Garcia v. Powers,* 973 F.2d 684, 685 (8th Cir.1992).

B. *Legal Analysis.* In urging the Court to deny the Petition without an evidentiary Hearing, the Respondent makes three arguments, none of which directly addresses the constitutionality of the SDP Act. First, the Respondent claims that the Petition must be denied under Section 2254(b)(1), because the Petitioner has not exhausted his available State Court remedies by presenting his constitutional claims to the Minnesota Supreme Court. The Respondent's second and third arguments begin with the assumption that the SDP Act is facially unconstitutional, but go on to urge that the constitutional flaws are harmless in the Petitioner's case, because the State District Court found that the Petitioner could not control his sexual impulses, and because his unchallenged, indeterminate commitment, as an SPP, provides an adequate and independent State law basis for his custody, which would render any examination of his constitutional claims an academic exercise.

■ 1. *Exhaustion of State Court Remedies.* The Respondent's assertion, that the Petitioner has not exhausted his State Court remedies, is plainly wrong. Under the exhaustion doctrine, a claim has not been exhausted in the State Courts,

and may not be raised in a Habeas case, unless the same factual grounds and legal theories, that were asserted in the Federal Habeas Petition, have been properly raised in the State Court proceedings. *Abdullah v. Groose,* 75 F.3d 408, 411 (8th Cir.1996), cert. denied, 517 U.S. 1215, 116 S.Ct. 1838, 134 L.Ed.2d 941 (1996); *Krimmel v. Hopkins,* 56 F.3d 873, 876 (8th Cir.1995), cert. denied, 516 U.S. 1015, 116 S.Ct. 578, 133 L.Ed.2d 501 (1995). State Courts should, ordinarily, have the first opportunity to determine whether a particular exercise of police power comports with the Constitution. *Hawkins v. Higgins,* 898 F.2d 1365, 1367 (8th Cir.1990).

■ Contrary to the Respondent's argument, as well as the holding in *Brown v. Easter,* 68 F.3d 1209 (9th Cir.1995), supplemented, 69 F.3d 543 (9th Cir.1995)—which the Respondent cites for support—our Court of Appeals maintains that a discretionary appeal, to a State's highest Court, is not necessary to satisfy the exhaustion requirement. *McGurk v. Stenberg,* 163 F.3d 470, 472 n. 2 (8th Cir.1998), citing *Dolny v. Erickson,* 32 F.3d 381, 384 (8th Cir.1994), cert. denied, 513 U.S. 1111, 115 S.Ct. 902, 130 L.Ed.2d 786 (1995). The *Dolny* decision points out that the jurisdiction of the Minnesota Supreme Court is ordinarily discretionary, and concludes that, when a petitioner "present[s] his claims to the Minnesota Court of Appeals, he afford[s] 'the State a full and fair opportunity to address and resolve the claim on the merits.'" *Dolny v. Erickson,* supra at 384. The Petitioner's claim, having been squarely presented to the Minnesota Court of Appeals, has been properly exhausted.

2. *The Justiciability of the Petitioner's Claim.*

■ Satisfaction of the exhaustion requirement, however, is not the sole prerequisite to our consideration of the merits of a Habeas claim. Petitions for Habeas Corpus, like other invocations of Federal jurisdiction, are not immune from the case-or-controversy requirement of Article III, Section 2, of the United States Constitution. See, *Spencer v. Kemna,* 523 U.S. 1, 118 S.Ct. 978, 983, 140 L.Ed.2d 43 (1998). "[F]ederal courts are without power to decide questions that cannot affect the rights of litigants in the case before them." *North Carolina v. Rice,* 404 U.S. 244, 246, 92 S.Ct. 402, 30 L.Ed.2d 413 (1971). To meet the case-or-controversy requirement, "the plaintiff 'must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision.'" *Spencer v. Kemna,* supra 118 S.Ct. at 983, quoting *Lewis v. Continental Bank Corp.,* 494 U.S. 472, 477, 110 S.Ct. 1249, 108 L.Ed.2d 400 (1990). As the Supreme Court has observed:

> Collateral review of a final judgment is not an endeavor to be undertaken lightly. It is not warranted absent a showing that the complainant suffers actual harm from the judgment that he seeks to avoid.

*Lane v. Williams,* 455 U.S. 624, 633 n. 13, 102 S.Ct. 1322, 71 L.Ed.2d 508 (1982).

■ Obviously, where a petitioner is incarcerated, a Habeas Petition that challenges a criminal conviction or a civil commitment Order almost always presents a justiciable case or controversy, because the incarceration itself constitutes a concrete injury, which is, ordinarily, redressable by the invalidation of the conviction, or the civil commitment Order.

Courts have, however, under the concurrent sentence doctrine, refused to consider Habeas petitions, which challenge criminal convictions that have resulted in sentences, and other collateral consequences, which are wholly subsumed by those conferred by other unassailable convictions. See, *Tyler v. Wyrick,* 540 F.2d 921, 923 (8th Cir.1976); *United States v. Neff,* 525 F.2d 361, 363 (8th Cir.1975); *Scott v. Louisiana,* 934 F.2d 631, 635 (5th Cir.1991); *Malloy v. Purvis,* 681 F.2d 736, 739 (11th Cir.1982), cert. denied, 460 U.S. 1071, 103 S.Ct. 1527, 75 L.Ed.2d 949 (1983). As explained by one Court:

The theory is that because the defendant remains sentenced in any event, reviewing the concurrently sentenced counts is of no utility. The practice is eminently practical and conserves judicial resources for more pressing needs. *Jones v. Zimmerman,* 805 F.2d 1125, 1128 (3rd Cir.1986), cert. denied, 480 U.S. 909, 107 S.Ct. 1356, 94 L.Ed.2d 526 (1987).

 In *Benton v. Maryland,* 395 U.S. 784, 790, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969), the Supreme Court stated that the concurrent sentence doctrine was discretionary, and insisted "that the existence of concurrent sentences does not remove the elements necessary to create a justiciable case or controversy." This conclusion was premised upon the principle that a Habeas action remains justiciable unless "there is no possibility that any collateral legal consequences will be imposed on the basis of the challenged conviction," *Sibron v. New York,* 392 U.S. 40, 57, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968), and upon the realization that the possibility of collateral consequences almost always flows from a challenged conviction. See, *Benton v. Maryland,* supra 395 U.S. at 790, 89 S.Ct. 2056. As the Supreme Court's more recent decision, in *Spencer v. Kemna,* supra at 118 S.Ct. 986, makes clear, however, in the absence of either custody, or the possibility of collateral consequences that would be redressable by a judicial decision, a collateral challenge to a conviction does not meet Article III's case-or-controversy requirement. Notwithstanding the assumption, in *Benton,* that a challenge to one of several concurrent sentences does not implicate Article III concerns—because other collateral legal consequences are presumed to exist—we conclude that, where the issuance of a Writ of Habeas Corpus would have no effect on a petitioner's term of custody, and would impose no collateral legal consequences, the Petition fails to present a justiciable case or controversy within the bounds of Federal jurisdiction, under Article III.

Whether it is considered to be discretionary or jurisdictional, our Court of Appeals has cautioned that the concurrent sentence doctrine should rarely be applied because it appears "to require 'no possibility' of prejudicial collateral consequences attendant upon the convictions—not just a slim possibility—before denying review on the merits." *Logan v. Lockhart,* 994 F.2d 1324, 1332 (8th Cir.1993), cert. denied, 510 U.S. 1057, 114 S.Ct. 722, 126 L.Ed.2d 686 (1994); see also, *Brewer v. Iowa,* 19 F.3d 1248, 1250 (8th Cir.1994)(Habeas corpus action held not moot, even though petitioner was sentenced for life on separate conviction, because challenged conviction, if undisturbed, could possibly harm the petitioner's chances at commutation of his life sentence). Thus, our reaction to the Respondent's position that, under the concurrent sentence doctrine, the Petitioner's facial constitutional challenge to the SDP Act should not be reviewed, is a thorough search for any potential collateral legal consequences that would not otherwise exist if it were not for the Petitioner's commitment under the SDP Act.

 We are aware of no published decision that has applied the concurrent sentence doctrine in the civil commitment milieu, where a petitioner has challenged one of two or more commitment Orders that have resulted in the same term of commitment. Having carefully reviewed the Petitioner's legal status, as a result of the State Courts' adjudication of him as an SPP, and as an SDP, we conclude that all of the direct, and collateral, legal consequences of the Petitioner's commitment, under the SDP Act, fit seamlessly within the *identical* consequences that arise from his commitment under the PP Act.

Starting with the obvious, the Petitioner received indeterminate terms of commitment, under both Acts, based upon evidence that was adduced at a single Trial. As the Minnesota Supreme Court has explained, other than creating a new class of individuals, who are eligible for civil commitment so as to allow therapeutic treat-

ment, "the operation of the SDP Act is substantially the same as the PP Act." *In re Linehan,* 557 N.W.2d 171, 179 (Minn. 1996), cert. granted, decision vacated, —— U.S. ——, 118 S.Ct. 596, 139 L.Ed.2d 486 (1997). Most significantly, "the same procedures for conditional and full discharge apply to [both] categories of patients." *Id.,* citing Minnesota Statutes Sections 253B.18, Subdivision 7, 15, 253B.185, Subdivision 1. Therefore, whether or not the Petitioner prevails in this Habeas proceeding, he will not be provisionally discharged unless it is shown that he "is capable of making an acceptable adjustment to open society," and will not be unconditionally discharged unless the State authorities conclude that he "is capable of making an adjustment to open society, is no longer dangerous to the public, and is no longer in need of inpatient treatment and supervision." Minnesota Statutes Section 253B.18, Subdivisions 7, 15. In short, the Petitioner's present and future custody, at the MSPTC, will not be affected, in any way, by the answer to the constitutional question he requests.

Moreover, there are no non-custody collateral legal consequences that stem from the Petitioner's adjudication as an SDP, that would not also exist by virtue of the State Court's determination that he is an SPP. In this respect, the Petitioner differs from a person, who is convicted of multiple criminal offenses, because cumulative criminal convictions may affect parole eligibility, considerations in sentence commutation, and sentencing for subsequent convictions, which is precisely why, in the ordinary case, Courts are willing to presume the existence of collateral legal consequences. See, *Brewer v. Iowa,* supra at 1250; *Logan v. Lockhart,* supra at 1332. We can envision no similar legal consequences that would flow from the Petitioner's commitment, pursuant to both Acts, that would not result from a commitment under either Act alone.

In the final analysis, we adhere to the Supreme Court's recent observation, that the practice of presuming collateral consequences diverges ·from the "long-settled

principle that standing cannot be 'inferred argumentatively from averments in the pleadings,' but rather 'must affirmatively appear in the record.' " *Spencer v. Kemna,* supra 118 S.Ct. at 984–85. The *Spencer* decision proceeded to explain that, while the presumption is likely to match reality in the context of criminal convictions, the same could not be said for parole revocations. *Id.* 118 S.Ct. at 985. The logic and reasoning of *Spencer,* which "counsels a cautious approach to the presumption of collateral consequences," *Beachem v. Schriro,* 141 F.3d 1292, 1294 (8th Cir.1998), cert. denied, —— U.S. ——, 119 S.Ct. 354, 142 L.Ed.2d 293 (1998), should be applied to this Petitioner who, in light of his unassailed commitment as a SPP, has shown no direct or collateral consequences, that result from the SDP Act's alleged constitutional infirmity. Therefore, he is not entitled to the same presumption of collateral consequences as afforded to criminal convicts in unrelated circumstances. While the Petitioner's claim presents reasons to doubt the constitutionality of the SDP Act, in light of *Hendricks,* there has been no showing that, because of the alleged constitutional flaw, the Petitioner has suffered, or is threatened with, an actual injury that is traceable to that constitutional infirmity, and that is likely to be redressed by the issuance of the Writ. See, *Spencer v. Kemna,* supra 118 S.Ct. at 983.

Accordingly, we recommend that the Petition be denied, without prejudice, because the Petitioner lacks Article III standing to challenge the constitutionality of the SDP Act.

NOW, THEREFORE, It is—

RECOMMENDED:

That the Petition for Writ of Habeas Corpus [Docket No. 1] be denied, without prejudice.

## NOTICE

Pursuant to Rule 6(a), Federal Rules of Civil Procedure, D. Minn. LR1.1(f), and D. Minn. LR72.1(c)(2), any party may object

to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties **by no later than May 21, 1999,** a writing which specifically identifies those portions of the Report to which objections are made and the bases of those objections. Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a Hearing, then the party making the objections shall timely order and file a complete transcript of that Hearing **by no later than May 21, 1999,** unless all interested parties stipulate that the District Court is not required by Title 28 U.S.C. § 636 to review the transcript in order to resolve all of the objections made.