# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

_____

No.  00-1215

_____

Anthony M.  Dixon,

        Appellant,

    v.

Dave Dormire, Superintendent,

        Appellee.

\*
\*
\*
\*
\*
\*
\*
\*
\*
\*

_____

No.  00-1907

_____

Appeals from the United States
District Court for the
Western District of Missouri.

George J.  L.  Barton,

        Appellant,

    v.

James Gammon,

        Appellee.

\*
\*
\*
\*
\*
\*
\*
\*
\*
\*

_____

No.  00-2047
_____

Freddie C.  Russell,                              *
                                                  *
            Appellant,                            *
                                                  *
      v.                                          *
                                                  *
Mike Kemna; Jeremiah (Jay)                        *
Nixon, Attorney General                           *
State of Missouri,                                *
                                                  *
            Appellees.                            *


_____

Submitted:  January 12, 2001
     Filed:  August 20, 2001
_____

Before WOLLMAN, Chief Judge, HANSEN and MURPHY, Circuit Judges.
_____

HANSEN, Circuit Judge.

      Anthony M. Dixon, George J.  L.  Barton, and Freddie C.  Russell appeal district
court orders denying their motions for habeas corpus relief pursuant to 28 U.S.C. §

2254. In each case, the district court found that the claims the petitioner raised were barred because the petitioner had not pursued them by seeking discretionary review before the state's highest court. We reverse and remand for further consideration.

## I.

A Missouri state court jury convicted Anthony Dixon of two counts of robbery in the first degree, forcible rape, forcible sodomy, and two counts of armed criminal action. The state trial court sentenced him to life in prison plus a term of 60 years. Dixon appealed his convictions. Dixon also filed a Missouri Supreme Court Rule 29.15 motion for postconviction relief, which was denied, and he appealed that ruling as well. The Missouri Court of Appeals heard the consolidated appeal and affirmed both the convictions and the denial of postconviction relief. See State v. Dixon, 969 S.W.2d 252 (Mo. Ct. App. 1998).

Pursuant to Missouri Supreme Court Rules 83.02 and 83.04 (2001), a defendant may apply to transfer his case to the Supreme Court of Missouri seeking its discretionary review following the disposition of the Missouri Court of Appeals. Dixon chose not to file a motion for discretionary review but instead filed a federal habeas petition pursuant to 28 U.S.C. § 2254, raising six issues. At that time, our circuit had decided that the exhaustion doctrine did not require a state prisoner to seek discretionary review prior to filing for federal habeas relief. See Dolny v. Erickson, 32 F.3d 381 (8th Cir. 1994), cert. denied, 513 U.S. 1111 (1995), abrogated by O'Sullivan v. Boerckel, 526 U.S. 838 (1999). Subsequent to the filing of Dixon's federal habeas petition, the Supreme Court of the United States decided, contrary to our holding in Dolny, that the exhaustion doctrine does require a state prisoner to file for any available discretionary review in the state's highest court prior to filing for federal habeas relief. O'Sullivan, 526 U.S. at 847-48. Relying on O'Sullivan, the district court dismissed Dixon's habeas petition with prejudice, concluding that Dixon's failure to seek discretionary review from the Supreme Court of Missouri amounted to a

3

procedural bar under the exhaustion doctrine. The court also concluded that Dixon's claim of ineffective assistance of counsel was not cause to excuse the default because he was not entitled to counsel in post conviction proceedings, and that no fundamental miscarriage of justice occurred because Dixon failed to show that he was actually innocent of the crimes for which he was convicted.

A Missouri state court jury convicted appellant George J. L. Barton of first degree burglary and attempted forcible sodomy, and the state trial court sentenced him to consecutive terms of five and fifteen years of imprisonment. Barton raised three issues on direct appeal. The Missouri Court of Appeals affirmed the convictions in an unpublished order dated January 6, 1998. Like Dixon, Barton did not file a motion to transfer to the Supreme Court of Missouri but instead filed a federal habeas corpus petition raising five issues. The district court dismissed the petition with prejudice, concluding that Barton's failure to file a motion to transfer seeking the discretionary review of the Supreme Court of Missouri amounted to a procedural bar, citing O'Sullivan. The district court noted that Barton stated no cause to excuse his default and that no fundamental miscarriage of justice occurred.

A Missouri state court jury convicted appellant Freddie C. Russell of four felony counts of delivering marijuana, and the state trial court sentenced him to a term of 40 years of imprisonment. The Missouri Court of Appeals affirmed his convictions. State v. Russell, 941 S.W.2d 11 (Mo. Ct. App. 1997). Pursuant to Missouri Supreme Court Rule 29.15, he filed a motion for postconviction relief, which the trial court denied, and the Missouri Court of Appeals affirmed the denial. Russell then raised seven claims for relief in his federal habeas petition. The district court disposed of one ground on the merits and denied the remaining six claims as procedurally defaulted under O'Sullivan because Russell had failed to seek a discretionary transfer of these claims to the Supreme Court of Missouri . The district court also concluded that ineffective assistance of counsel was not cause to excuse the default and that no fundamental miscarriage of justice occurred.

Dixon, Barton, and Russell (hereinafter "the Petitioners") were each granted a certificate of appealability on the question of whether the respective district courts correctly concluded that their claims were procedurally barred in light of the Supreme Court's O'Sullivan opinion. We consolidated their appeals. Because the issues raised all deal with the district courts' applications of the O'Sullivan case, we are concerned only with questions of law, to which we apply a de novo standard of review. See Juarez v. Minnesota, 217 F.3d 1014, 1016 (8th Cir. 2000).

## II.

It is well established that the exhaustion doctrine, now codified, precludes the issuance of a writ of habeas corpus to a state prisoner on a claim for which that prisoner has not "exhausted the remedies available" in the state courts. 28 U.S.C. § 2254(b)(1)(A), (c) (1994 & Supp. IV 1998). "The purpose of exhaustion is not to create a procedural hurdle on the path to federal habeas court, but to channel claims into an appropriate forum, where meritorious claims may be vindicated and unfounded litigation obviated before resort to federal court." Keeney v. Tamayo-Reyes, 504 U.S. 1, 10 (1992). While the exhaustion doctrine does not require a petitioner to file repetitive petitions in state court or to invoke "extraordinary remedies" outside the standard review process where relief has not been provided in the past, it does require a state prisoner to "give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." See O'Sullivan, 526 U.S. at 844-45. The Supreme Court has clarified that in order to invoke "one complete round" of available state court remedies prior to filing for federal habeas corpus relief, a state prisoner must seek the discretionary review of the state supreme court when that review is part of the ordinary and established appellate review process in that state. Id. at 845, 847. None of the Petitioners in this consolidated appeal sought discretionary review in the Supreme Court of Missouri before filing their petitions for federal habeas corpus relief, and the

5

time for doing so under state law has expired. For various reasons, they contend that the holding of the O'Sullivan case should not apply to them.

A.

The Petitioners first argue that a motion to transfer a case for discretionary review by the Supreme Court of Missouri under Missouri law is not equivalent to the type of discretionary review existing in Illinois law, which the Supreme Court declared to be necessary for exhaustion in O'Sullivan. The Supreme Court emphasized in O'Sullivan that the exhaustion doctrine "turns on an inquiry into what procedures are 'available' under state law." 526 U.S. at 847. We must therefore carefully consider what procedures are part of Missouri's established appellate review process in order to determine what procedures are "available" and therefore must be exhausted prior to bringing a federal habeas claim pursuant to 28 U.S.C. § 2254.

Missouri law creates a two-tiered appellate review process similar to that existing in Illinois law, which was the subject of the O'Sullivan case. Missouri Supreme Court Rules 83.02 and 83.04 provide that a case disposed of by an opinion of the Missouri Court of Appeals may be transferred to the Supreme Court of Missouri by application of a party in certain circumstances. Specifically, "[t]ransfer may be ordered because of the general interest or importance of a question involved in the case or for the purpose of reexamining existing law." Mo. Sup. Ct. R. 83.02 (2001). Additionally, a majority of the Missouri Court of Appeals may transfer a case on its own motion, Mo. Sup. Ct. R. 83.02; a dissenting judge of the court of appeals may transfer a case, Mo. Sup. Ct. R. 83.03; or the Supreme Court of Missouri may transfer a case on its own motion prior to disposition in the court of appeals, Mo. Sup. Ct. R. 83.01.

The Petitioners argue that a discretionary transfer to the Supreme Court of Missouri was not truly "available" to them because their cases did not meet the criteria

listed in the rule as necessary to properly apply for a transfer. See Mo. S. Ct. R. 83.02. We disagree. We acknowledge that Missouri's rule is not on all fours with the Illinois rule, but the crucial inquiry under O'Sullivan involves whether the state supreme court has retained the opportunity to decide which cases to hear on the merits or whether the state's rules indicate that discretionary review by the state's highest court is not within the ordinary appellate review process. 526 U.S. at 846-48. The Illinois rule at issue in O'Sullivan allowed an application to transfer for discretionary review by the Illinois Supreme Court for the same type of reasons as the Missouri rule, but it specifically noted that the reasons enumerated in the rule "neither control[] nor fully measur[e] the court's discretion."[1] 526 U.S. at 843 (quoting Ill. Sup. Ct. R. 315(a)). The Supreme Court noted that by the Illinois rule's own terms, its criteria do not control the state supreme court's discretion: "The Illinois Supreme Court is free to take cases that do not fall easily within the descriptions listed in the Rule." Id. at 846. Because the Illinois Supreme Court has retained the opportunity to decide which cases it will hear on the merits, the Supreme Court held in O'Sullivan that it could not conclude that discretionary review was unavailable for purposes of the exhaustion doctrine. Id.

Missouri's rule is somewhat more limited than the Illinois rule, but we are nevertheless convinced that the Supreme Court of Missouri still retains the opportunity

---

[1]The rule governing discretionary review in Illinois states as follows:

The following, while neither controlling nor fully measuring the court's discretion, indicate the character of reasons which will be considered: the general importance of the question presented; the existence of a conflict between the decision sought to be reviewed and a decision of the Supreme Court, or of another division of the Appellate Court; the need for the exercise of the Supreme Court's supervisory authority; and the final or interlocutory character of the judgment sought to be reviewed.

O'Sullivan, 526 U.S. at 843 (quoting Ill. Sup. Ct. R. 315(a)).

7

to decide which cases it will hear on the merits. We agree with the Petitioners' contention that a state prisoner applying for discretionary review in Missouri must be able to couch his issues in the terms enumerated in the rule in order to file a proper application for transfer to the Supreme Court of Missouri and that the Missouri rule does not specifically preserve that court's discretion to review cases that do not fall within those listed descriptions, as does the Illinois rule. Nevertheless, like the rule in Illinois, the language of the Missouri rule permits a transfer "because of the general interest or importance of a question." Mo. Sup. Ct. R. 83.02. This states a rather broad and subjective eligibility criteria, which is not, in our opinion, so limited or strict as to render a transfer unavailable to most litigants.

In O'Sullivan, the Supreme Court stated that "even if we were to assume that the Rule discourages the filing of certain petitions, it is difficult to discern which cases fall into the 'discouraged' category." 526 U.S. at 846. The same can be said of Missouri's rule given the broad language of Missouri's listed eligibility criteria for filing a motion to transfer. Missouri's rule allows a motion for transfer in cases that can honestly assert some "general interest or importance of a question." Mo. Sup. Ct. R. 83.02. Determining which cases meet this broad criteria is within the Supreme Court of Missouri's discretion. It would be difficult for us to determine in each case whether a motion for transfer could have been properly filed. Out of our respect for principles of federalism and comity, we respectfully decline to take upon ourselves the decision in each case of discerning whether a petitioner's claims fit within the broad eligibility criteria of Missouri's transfer rules. Our exhaustion doctrine involves determining what relief was available to a petitioner, not guessing at what the state supreme court would have considered to be a proper application for transfer in an individual case. We leave as we must to the Supreme Court of Missouri the discretionary call of determining which Missouri cases have stated a proper application to transfer under that court's own rules. Also, the appropriate question for us is not whether the Supreme Court of Missouri would exercise or should have exercised its jurisdiction to entertain a

8

particular case, but whether the opportunity to file for this remedy was generally available to the Petitioners. We conclude that it was.

If the Missouri courts do not wish to make this discretionary review remedy generally available to state prisoners, then a clear statement of that intent must be made. Nothing in Missouri law plainly states that a transfer to the Supreme Court of Missouri is an extraordinary remedy outside the standard review process. See O'Sullivan, 526 U.S. at 850 (Souter, J., concurring) (highlighting that the Court left open the possibility that a prisoner may skip a procedure for review that "the State has identified as outside the standard review process"); see also id. at 848 (holding "the creation of a discretionary review system does not, without more, make review in the [state supreme court] unavailable"). To the contrary, the right to invoke the discretionary jurisdiction of the Supreme Court of Missouri as provided in the rule is guaranteed by the Missouri Constitution. Mo. Const. art. 5, § 10 ("Cases pending in the court of appeals may be transferred to the supreme court . . . before or after opinion because of the general interest or importance of a question involved in the case, or for the purpose of reexamining the existing law, or pursuant to supreme court rule."). The Missouri Court of Appeals has expressly noted, "No conclusion we reach nor any action we take can become final without affording the defendant a fair opportunity to invoke the jurisdiction of the highest court of this State, and the right to invoke the jurisdiction of that court is guaranteed by the Constitution of this State." Mercer v. State, 666 S.W.2d 942, 944 (Mo. Ct. App. 1984). If Missouri had articulated a clear intention to place discretionary review by its Supreme Court outside the ordinary and established review process for persons convicted in Missouri state courts, we would not be at liberty to ignore that intent. O'Sullivan, 526 U.S. at 847-48 (stating that courts may not "ignore any state law or rule providing that a given procedure is not available"). At this time, however, Missouri has not clearly stated an intent to remove discretionary review by its highest court from the ordinary and established review process.

9

The Petitioners cite a handful of unpublished orders of the Supreme Court of Missouri, stating in other cases that "transfer is not an available procedure unless there is a proper application for transfer" and that "[i]f grounds for transfer do not exist, the court of appeals['] decision is final and the defendant has exhausted his state remedies." (Dixon's Adden. at 112, 114; Barton's Adden. at A6, A8, A10, A12, A14.) In each of the orders cited, it appears that a transfer was sought not on the basis of any grounds enumerated in the rule but solely and expressly for the purposes of exhausting state remedies under O'Sullivan. Certainly, a petitioner must be able to couch his motion for transfer within the broad factors enumerated in the rule in order to state a proper application for transfer. To place a remedy within the realm of the extraordinary, however, there must be a clear indication that the standard process is complete prior to evoking that remedy.

Justice Souter's concurring opinion in O'Sullivan cites to a published order of the Supreme Court of South Carolina, which clearly states that once a "claim has been presented to the Court of Appeals or the Supreme Court, and relief has been denied, the litigant shall be deemed to have exhausted all available state remedies." 526 U.S. at 849 (Souter, J., concurring and quoting in re Exhaustion of State Remedies in Criminal and Post-Conviction Relief Cases, 471 S.E.2d 454 (1990)). Similarly, the Ninth Circuit noted that discretionary relief did not need to be exhausted where the Arizona Supreme Court has expressly stated that "[o]nce the defendant has been given the appeal to which he has a right, state remedies have been exhausted." Swoopes v. Sublett, 196 F.3d 1008, 1011 (9th Cir. 1999) (internal quotations omitted), cert. denied, 529 U.S. 1124 (2000). The Supreme Court of Missouri's statements in the above-quoted unpublished orders leave open the possibility that a prisoner may file an application for transfer as part of the ordinary review process as long as the application is presented within the broad criteria stated in the rule. Because there is no clear statement from the Supreme Court of Missouri that the ordinary process is complete once a claim has been initially presented to the Missouri Court of Appeals and a decision rendered, the transfer process remains an available remedy.

10

Thus, we conclude that the exhaustion principle announced in O'Sullivan – that a state prisoner must exhaust discretionary review of the state's highest court unless that review has been declared not to be part of the state's ordinary appellate process– requires Missouri prisoners to seek a transfer for discretionary review by the Supreme Court of Missouri because Missouri law has not removed discretionary review from its ordinary and established appellate review process.

B.

Although the principle announced in O'Sullivan applies to Missouri law as currently written and interpreted, we are persuaded by the Petitioners' claim that the failure to exhaust defense should not be applied to them because they bypassed the opportunity to apply for discretionary review before the Supreme Court filed its O'Sullivan opinion in reliance on the State's prior and consistent position that the available but unapplied for discretionary review would not be asserted as a defense to their claims in federal court. Now the State's position has changed. A state procedural rule only prevents federal review where it is "a firmly established and regularly followed state practice." Ford v. Georgia, 498 U.S. 411, 423-24 (1991) (internal quotations omitted). The Supreme Court has said that "state procedural rules not strictly or regularly followed may not bar our review." Id. at 424 (internal quotations omitted).

The Petitioners assert, and the State does not deny, that for eight consecutive years the State consistently chose not to assert a failure to seek discretionary review as an exhaustion defense in federal habeas cases. Specifically, until the Supreme Court's O'Sullivan opinion was rendered in 1999, the State had not asserted this defense since 1991, when the State conceded that no failure to exhaust arises in this context, see Evans v. Dowd, 932 F.2d 739, 741 (8th Cir.), cert. denied, 502 U.S. 944 (1991). Thus, even before we decided the issue in a 1994 Minnesota case, where we specifically noted that up until then the issue "remain[ed] open in this circuit," Dolny,

11

32 F.3d at 383, the Missouri Attorney General had not strictly or regularly asserted that a state prisoner must seek discretionary review in the Supreme Court of Missouri in order to exhaust his available state court remedies.

We are mindful of our duty to apply the law as it exists at the time of our review. See Diffenderfer v. Cent. Baptist Church, 404 U.S. 412, 414 (1972) (stating that courts must review the district court's judgment in light of the law as it now stands). The Supreme Court has previously instructed that "[w]hen this Court applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review and as to all events, regardless of whether such events predate or postdate our announcement of the rule." Harper v. Virginia Dep't of Taxation, 509 U.S. 86, 97 (1993). The exhaustion doctrine is codified in 28 U.S.C. § 2254(b)(1), (c), and has long required a state prisoner to raise his claims "by any available procedure" in the state courts. "'It is the Supreme Court's responsibility to say what a statute means,' and a 'judicial construction of a statute is an authoritative statement of what the statute meant before as well as after the decision of the case giving rise to that construction.'" Mayberry v. United States, 151 F.3d 855, 860 (8th Cir. 1998) (quoting Rivers v. Roadway Express, Inc., 511 U.S. 298, 312-13 (1994), and alterations omitted). Where, as here, there has been no change in the law, we must give effect to the Supreme Court's enunciation of what the statute has always meant, id., even though our circuit precedent may have been otherwise when this dispute arose, see Rivers, 511 U.S. at 312.

Nevertheless, we conclude that justice dictates a different outcome for the cases at hand because the State has not consistently asserted that the failure to seek a discretionary transfer is a bar to federal habeas relief. Although discretionary review was "available" through a motion to transfer, and the Petitioners were aware of their right to apply for a transfer to the state supreme court, the Petitioners in this case reasonably relied on Missouri's "firmly established and regularly followed state

practice" of <u>not</u> asserting the failure to seek discretionary review as a bar. <u>Ford</u>, 498 U.S. at 423-24. "This is not a case . . . of a defendant attempting to circumvent . . . a firm state procedural rule." <u>James v. Kentucky</u>, 466 U.S. 341, 350 (1984). The Petitioners are caught in a classic Catch-22 situation where the State had lulled them to believe that it would not assert a failure to seek discretionary review as a defense in federal court, and now that the time for seeking discretionary review has expired and the Supreme Court of the United States has ruled that the failure to seek discretionary review is a bar, the State raises it.[2] Having relied on the State's regular and acknowledged practice of not asserting this defense, the Petitioners bypassed an otherwise available state remedy that they reasonably believed was inapplicable to them and unnecessary to exhaustion.

Now that the Supreme Court has clarified that the exhaustion doctrine requires a petitioner to seek this type of discretionary review, the State understandably relies on current Supreme Court precedent to assert the statutory bar. We do not imply that this is itself improper; we hold only that the exhaustion doctrine should not be applied in these cases because these particular Petitioners had no reasonable notice that the State would change horses in midstream and assert the Petitioners' failure to seek discretionary review in state court as a defense to their federal habeas claims. "[U]nexpectable state procedural bars are not adequate to foreclose federal review of constitutional claims." <u>Easter v. Endell</u>, 37 F.3d 1343, 1346 (8th Cir. 1994); <u>see also</u> <u>Ford</u>, 411 U.S. at 423 (noting state procedural rules should not be applied where the defendant could not be deemed to have been apprised of its existence). The Petitioners were aware of the discretionary transfer rules, but they were also aware of the State's consistent position that the failure to seek discretionary review in the Supreme Court

---

[2]We do not mean to criticize the State for its earlier actions. We had held ourselves that discretionary review of this sort was not really "available" because very few petitions for discretionary review were actually granted and the remedy was not truly available because it was likely to be fruitless. <u>See</u> <u>Dolny</u>, 32 F.3d at 384. We also, it turns out, were wrong.

of Missouri was not a bar to federal habeas relief. Thus, the Petitioners were not fairly apprised that their decision to bypass this state appellate procedure would be used against them in federal court.

Because we hold that it is improper in these cases to bar the claims based upon the Petitioners' failure to seek discretionary review in the state supreme court, there is no need for the Petitioners to demonstrate any cause and prejudice to overcome it.[3]

## III.

Accordingly, we reverse and remand for consideration of the merits of the Petitioners' claims. We deny all pending motions to supplement the record.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

---

[3]Prospectively, after O'Sullivan, it will be absolutely necessary for Missouri prisoners to file a motion to transfer to the Supreme Court of Missouri in order to exhaust their state remedies before repairing to the federal district court for federal habeas relief, unless, of course, the Supreme Court of Missouri clearly determines otherwise, ala South Carolina and Arizona.