# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-2755

_____

| | | |
|---|---|---|
| Alexander Juarez, | * | |
| | * | |
| Petitioner-Appellant, | * | |
| | • | Appeal from the United |
| v. | * | States District Court for |
| | * | the District of Minnesota. |
| State of Minnesota, | * | |
| | * | |
| Respondent-Appellee. | * | |

_____

Submitted: June 16, 2000
Filed: June 29, 2000

_____

Before MURPHY, HEANEY, and MAGILL, Circuit Judges.

_____

MURPHY, Circuit Judge.

Alexander Juarez was convicted in Minnesota of attempted criminal sexual conduct, third degree criminal assault, and two counts of soliciting a minor to engage in prostitution. After his state appeals were decided, he filed this habeas petition pursuant to 28 U.S.C. § 2254, raising claims of ineffective assistance of counsel, prosecutorial misconduct, denial of a fair trial, and sentencing errors. The district court[1] denied the petition, but granted a certificate of appealability on the issue of

_____

[1]The Honorable Donovan W. Frank, United States District Judge for the District of Minnesota.

whether the admission of a statement Juarez made about a lawyer during his custodial interrogation deprived him of a fair trial. We affirm.

The evidence underlying Juarez's convictions was thoroughly set out by the Minnesota Supreme Court in State v. Juarez, 572 N.W.2d 286, 287-90 (Minn. 1997). Juarez worked as a maintenance painter at St. Joseph's Home for Children, a facility for emotionally disturbed children. One of the programs at St. Joseph's allowed certain children to work with staff both at the facility and outside of it. Juarez had interaction with several children through this program, including three who testified at trial that Juarez fondled them and paid them money to allow him to fondle them. One child testified that Juarez had anal intercourse with him and that they watched pornographic movies together. Another child testified that Juarez had digitally penetrated his anus, had asked him if he could insert his "dingleberry" into his anus, and had threatened to put him in a "cuckoo house" if he told anybody what was going on. Another testified that Juarez made many sexual references in front of him, including once mentioning that he had a twelve inch penis. The jury also heard testimony from Juarez's foster son who stated that Juarez "touched [his] butt" on more than one occasion, tried to touch his "booty-hole" with his finger, and asked on one occasion "if he could put his dick in my butt." In addition to the victims, several police officers testified for the prosecution. During one of the officer's testimony, a tape of Juarez's custodial interrogation was played, including Juarez's statement "I'm gonna have to get a lawyer next."

The jury acquitted Juarez of first degree criminal sexual conduct against one of the children, but convicted him of attempted first degree criminal sexual conduct against that child. He also was convicted of third degree criminal sexual conduct against another child, and two counts of soliciting minors for prostitution. He was sentenced to consecutive terms of 86 months and 36 months and was ordered to pay eight hundred dollars in fines, to register as a sex offender, and to provide a DNA sample.

Juarez appealed to the Minnesota Court of Appeals, alleging that the trial court had abused its discretion in admitting evidence, in excluding defense evidence, and in sentencing him to an upward departure, and that the prosecutor had committed prejudicial misconduct. The Court of Appeals affirmed. See State v. Juarez, No. C2-96-404, 1996 WL 706832, at *2-3 (Minn. Ct. App. Dec. 10, 1996). The Minnesota Supreme Court later took up only the issue of whether the trial court's admission of Juarez's statement on the tape about a lawyer was error. The court used the occasion to clarify the Minnesota harmless error standard, explicitly adopting the federal standard outlined in Chapman v. California, 386 U.S. 18, 22-24 (1967), and Sullivan v. Louisiana, 508 U.S. 275, 278-82 (1993). The court then performed a thorough Chapman review of the record, concluding that the error was "harmless beyond a reasonable doubt" because based on the record as a whole there was no "'reasonable possibility that the evidence complained of might have contributed to the conviction.'" Juarez, 572 N.W.2d at 291-93 (quoting Chapman, 386 U.S. at 18, 23). Juarez subsequently filed this federal habeas petition. The district court adopted the magistrate judge's[2] report and recommendation and denied the petition, concluding, among other things, that admission of the taped statement was harmless error under Chapman and Sullivan. The court granted a certificate of appealability on this issue, however.

We review any findings of fact by the district court for clear error and its conclusions of law de novo, see Richardson v. Bowersox, 188 F.3d 973, 977 (8th Cir. 1999), cert. denied, 120 S. Ct. 1971 (2000), and we apply a presumption of correctness to findings of fact by state courts, see id.; 28 U.S.C. § 2254(e)(1) (1994 & Supp. 2000).

---

[2]The Honorable Arthur J. Boylan, United States Magistrate Judge for the District of Minnesota.

Juarez contends that admission of his taped statement was not harmless error. The Chapman harmless error standard, requiring a reviewing court to find harmlessness beyond a reasonable doubt, is generally inapplicable in the context of collateral review. See Brecht v. Abrahamson, 507 U.S. 619, 637 (1993). Instead, a "less onerous" standard of whether the error "'had substantial and injurious effect or influence in determining the jury's verdict'" is used for habeas review. Id. (quoting Kotteakos v. United States, 328 U.S. 750, 776 (1946)). This court will nevertheless apply the stricter Chapman standard in the context of habeas review if the state court has not conducted its own harmless error analysis. See Beets v. Iowa Dep't of Corrections Servs., 164 F.3d 1131, 1134 n.3 (8th Cir.), cert. denied, 120 S. Ct. 75 (1999).

Because the Minnesota Supreme Court conducted a through harmless error analysis under Chapman, we review Juarez's claim under the Brecht standard. In light of the overwhelming evidence presented at trial of Juarez's guilt, admission of the "I'm gonna have to get a lawyer next" statement did not have a "substantial and injurious effect or influence" on the verdicts. Brecht, 507 U.S. at 637. Juarez's foster son and three separate residents of St. Joseph's testified about Juarez's sexual contacts with them and his propositions to them: asking if he "could put his dick in [one of the children's] butt;" attempting to have anal sex with one of the children but failing due to his impotency, and later completing the act; making comments to the children about sexual acts and showing them money. The defense hinted at possible collusion between the witnesses, but the initial interviews of the children conducted by the investigating officer occurred one day apart, meaning that collusion was highly improbable. In addition, several of the children testified that were not acquainted with the others, and one left St. Joseph's before two of the others became residents, thus corroborating their claims that they did not know each other. Finally, as the Minnesota Supreme Court noted, the defense called eight witnesses of its own. The jury thus was not forced to base its credibility determination solely on whether it believed Juarez or the victims, meaning that the admitted statement was only a small part of the record evidence relating to Juarez's credibility. We would arrive at the same decision as the

Minnesota Supreme Court and hold that admission of the statement was harmless beyond a reasonable doubt even if we were to apply the stricter <u>Chapman</u> standard.

Juarez also alleges on appeal, apparently for the first time, that admission of the taped statement amounted to structural error. We generally decline to address arguments raised for the first time on appeal, <u>see</u> <u>United Waste Sys. of Iowa, Inc. v. Wilson</u>, 189 F.3d 762, 768 n.4 (8th Cir. 1999), but even if Juarez had not waived this claim, it falls far short. A structural error is an error that "affect[s] the framework within which the trial proceeds, rather than simply an error in the trial process itself. <u>Arizona v. Fulminante</u>, 499 U.S. 279, 310 (1991). Such errors "call into question the very accuracy and reliability of the trial process and thus are not amenable to harmless error analysis, but require automatic reversal." <u>McGurk v. Stenberg</u>, 163 F.3d 470, 474 (8th Cir. 1998); <u>see</u> <u>Fulminate</u>, 499 U.S. at 309-10. Examples of structural errors include: total deprivation of the right to counsel; a judge who is not impartial; the unlawful exclusion of members of the defendant's race from a grand jury; denial of the right to self-representation at trial; or the right to public trial. <u>See</u> <u>Fulminate</u>, 499 U.S. at 310.

Juarez contends that admission of the taped statement was structural error because it forced his trial counsel to use "unorthodox tactics," such as not objecting to the portion of the tape where the interrogating officers gave Juarez a <u>Miranda</u> warning and putting Juarez on the stand in his own defense, to counteract the statement. Assuming that these decisions resulted from admission of the statement and were not independent strategy decisions on the part of counsel, simply adjusting trial strategy as the need arises does not constitute structural error. If it did, nearly every trial error would be elevated to structural error since all trial errors undoubtedly force counsel to adjust strategy. The admission of Juarez's statement about getting a lawyer is not similar to the types of errors that affect the framework of the trial, <u>see</u> <u>Fulminante</u>, 499 U.S. at 310, but rather is the type of trial mistake subject to harmless error analysis. <u>See, e.g.</u>, <u>United States v. Hasting</u>, 461 U.S. 499 (1983) (improper comment on

defendant's silence at trial subject to harmless error analysis); <u>Milton v. Wainwright</u>, 407 U.S. 371 (1972) (unlawfully obtained confession subject to harmless error analysis); <u>Hobbs v. Lockhart</u>, 791 F.2d 125 (8th Cir. 1986) (prosecutor's statement that defendant's call to his lawyer was a "telling sign" subject to harmless error analysis).

For the foregoing reasons, the district court's denial of Juarez's writ of habeas corpus is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.